**UNITED STATES of America**

v.

**William Alexander BLOCK.**

**No. 77–9–Misc–J.**

United States District Court,
M. D. Florida,
Jacksonville Division.

June 29, 1978.

Curtiss Fallgatter, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff.

William A. Block, M.D., pro se.

## OPINION

CHARLES R. SCOTT, District Judge.

On January 31, 1977, defendant-appellant, LCDR William Alexander Block, M.D., was stopped for speeding at the Naval Air Station in Jacksonville, Florida. By radar, Dr. Block was determined to be driving at least 40 m. p. h. more than 1,000 feet before a 40 m. p. h. speed sign. Dr. Block was ticketed for violating Fla.Stat. § 316.183, which together with Fla.Stat. § 316.187(1) provides that the maximum speed limit for vehicles on streets and highways shall be 30 m. p. h. in business or residential districts unless the Department of Transportation determines that a greater speed (but less than 55 m. p. h.) is reasonable under the conditions at any part of a street or highway. That statute is made applicable to the "territorial jurisdiction of the United States" by the Assimilative Crimes Act, 18 U.S.C. §§ 7 and 13, just as if a violation of it had been committed "within the jurisdiction of" the State of Florida.

Dr. Block appeals a conviction by the Honorable Harvey E. Schlesinger, United States Magistrate. Appellate review of convictions in the Magistrate's court are based on the same standard and scope of review as appeals from district courts' judgments to the courts of appeals; and there is no right to a trial de novo in the district court. Fed.R.P.Min.Off. 8(d). *United States v. Fletcher,* 344 F.Supp. 332, 335 (E.D.Va.1972).

The facts as found by the Magistrate are not in dispute on this appeal. The sole issue presented on appeal is purely one of law. It is whether, under Fla.Stat. § 316.-183, as applied to the federal naval base by 18 U.S.C. § 7 and 13, differing traffic speed zones become effective at the location where the speed limit signs are placed, or upon visibility to, and sighting by, a motor vehicle operator.

The court below held that, because scientific instruments of measurement, including radar speed detection devices, are not exact,

Dr. Block's conviction would not be based on the technical radar reading that he had been driving 42 m. p. h. prior to the 40 m. p. h. speed sign. Instead, the court held, as a matter of law, that a different speed zone changes at the place where the speed limit sign is posted, not at the place where one can see the sign. In so holding, the Magistrate specifically chose not to avoid the principal issue in this case, by means of a technical, factual distinction. Dr. Block challenges that decision as being legally mistaken.

*The Sign is More Certain Than the Eye*

First, Dr. Block contends that different speed zones become effective when the applicable speed limit signs become visible to a driver. His view is that, once a speed limit sign is seen, the driver is placed on notice that he may at once begin adjusting his speed to conform with the posted speed limit. To support this view, Dr. Block, in the court below, referred to the ancient reasoning and logical paradoxes of a pre-classical thinker. Specifically, Dr. Block alluded to paradoxes of Zeno,[1] particularly the one known as 'Achilles and the Tortoise'.[2] The paradoxes of Zeno were logical arguments, premised on the belief that there is one infinite, indestructible, indivisible, unchanging reality. From that premise, the paradoxes were intended to show that the common-sense belief that motion was real led to contradictions. Thus, in order to avoid contradictory conclusions, one should give up the seemingly obvious beliefs of sense experience, including the belief that motion is possible and real. Instead, one should rely on the logically consistent conclusions of reason, even when they run counter to what is apparently perceived through the senses. Modern mathematical concepts of infinity, together with calculus accounting for acceleration, have helped to solve the paradoxes of motion.

Dr. Block argues that those modern day solutions to the paradoxes demonstrate the need for faster speed zones to become effective upon sight of the speed limit signs, in order to allow for acceleration. However, Dr. Block does not dispute, and it is not questioned, that his car was in fact moving and would have reached the speed limit sign in only a matter of time. Consequently, the contradictions of the paradoxes of motion do not apply to Dr. Block's situation and they are not relevant to deciding the issue in this case.

The issue of where changing speed zones become effective is one for which there are no reported decisions as guiding authority. It appears, therefore, to be a question of first impression, and "must be resolved by logic and reason" in accordance with the general applicable law. *United States v. Best*, 434 F.Supp. 1153, 1154 (E.D.Calif. 1977). *Cf. Comstock v. United States*, 419 F.2d 1128, 1129 (9th Cir. 1969).

For the same good reasons on which the Magistrate based the judgment of conviction in the court below, this Court must reject Dr. Block's theory that differing speed zones become effective upon sight of the posted speed limit signs by motorists. To hold that changing traffic speed zones become effective when the posted signs become visible would result in the law being

1. Zeno, who lived in Elea, Italy, some time around 510–460 B.C. was a student of Parmenides, an older contemporary of Socrates.

2. Zeno's paradoxes of motion are known as 'The Race Course,' 'Achilles and the Tortoise,' 'The Arrow,' and 'The Stadium'. In Achilles and the Tortoise, Zeno argued that swift Achilles could never overtake the slow tortoise because the belief that he could do so led to contradictions. Specifically, the argument is as follows: assume that motion is possible. Then, if one assumes that Achilles can travel from one point, to some other point to which the tortoise has advanced, in order to catch the tortoise, Achilles must cross an infinite number of points in between. Because it is impossible for mortal Achilles (no matter how swift) to cross an infinite number of points in a finite time, Achilles can never catch the tortoise. The contradiction, then, is that from assuming that Achilles can catch the tortoise, one concludes that Achilles can never catch the tortoise. This self-contradiction, Zeno argued, resulted from the initial assumption that motion is possible. Consequently, in order to avoid such self-contradictory thinking, one must conclude that motion is not possible.

variable, uncertain, and relative to individual motorists' eyesight. The effect would be theoretically confusing, as well as practically impossible. Dr. Block attempts to escape this relativism and uncertainty by urging the acceptance of medical standards for minimal vision. Apparently, differing speed zones would become effective whenever the appropriate speed limit signs are visible within the standards for minimal vision. But that recommendation is no improvement.

To begin with, minimum vision standards are not sufficient to account for varying visibility due to changes in geographical conditions as well as weather conditions. If a different set of minimum vision standards were to be employed when geographical or weather conditions affect visibility, then the rule of law would become more uncertain, relative, and confused by depending on even more variables. Theoretically, in order to determine what the rule of law would be concerning the boundaries of speed zones, one would have to consider not only the eyesight of individual motorists, but also the particular geographical and weather conditions that might change from day to day, or even hour to hour. Finally, as a practical matter it would be necessary for law enforcement officers to take into account all of the variables in each particular situation, and to measure the specific visibility distance within the minimum vision standards of each such situation.

The rule of law must be hard and fast in its commands to those who must obey it; and it must apply equally and even-handedly to all. The intrinsic uncertainty and variation in the law that would result from Dr. Block's interpretation of it would produce unfair and absurd results for both those who are obliged to obey it, and those who must enforce it. By Dr. Block's notion of the law, a motorist could begin accelerating within, for example, a school zone as soon as he could see the sign ahead that marked the end of the school zone. That would defeat the purpose of the law's establishment of school zones.

By holding that different speed zones become effective at the point where the speed limits signs are located, the law becomes firmly definite and understandable to all. That view of the law, Dr. Block argues, would require motorists to decelerate instantaneously upon reaching a speed limit sign that indicates a slower speed zone. This argument, however, results from a misunderstanding about the effect of speed zones and their posted speed limit signs.

■ A speed limit sign that indicates a slower speed zone ahead means that the motorist must be travelling at that slower speed by the time he reaches that sign and thereafter. In plain words, a speed limit sign for a slower speed zone requires a motorist to have his speed reduced by the time he reaches the sign. Slower speed zones, in short, are mandatory. On the other hand, a speed limit sign indicating a faster speed zone simply means that a motorist may proceed at a faster speed than he is presently permitted once he has reached that sign. The speed limit sign for a faster speed zone does not require that a motorist be driving at the faster speed when he reaches the sign, but simply allows him to begin doing so once he has reached the sign. Faster speed zones are permissive.

■ The Court holds therefore that, under the provisions of Fla.Stat. § 316.183 (via 18 U.S.C. §§ 7 and 13), different speed zones become effective, whether faster or slower, at the location where their corresponding speed limit signs are posted.

### The Principle of Strict Construction & The Rule of Lenity

Second, Dr. Block argues that, if his theory about when different speed zones become effective is mistaken, nevertheless his conviction should be overturned because until now, the meaning of the statue was uncertain and indefinite. This plea for leniency is bottomed on the principle that criminal statutes are to be strictly construed against the government, and in favor of leniency for a defendant, when there is any uncertainty or ambiguity concerning the statute. *Adamo Wrecking Co. v. Unit-*

*ed States*, 434 U.S. 275, 283, 98 S.Ct. 566, 572, 54 L.Ed.2d 538, 548 (1978); *Huddleston v. United States*, 415 U.S. 814, 830–31, 94 S.Ct. 1262, 1271, 39 L.Ed.2d 782, 794 (1974); *United States v. Bass*, 404 U.S. 336, 347–48, 92 S.Ct. 515, 522, 30 L.Ed.2d 488, 496–97 (1971); *United States v. Campos-Serrano*, 404 U.S. 293, 297, 92 S.Ct. 471, 474, 30 L.Ed.2d 457, 462 (1971); *United States v. Cook*, 384 U.S. 257, 262–63, 86 S.Ct. 1412, 1414–15, 16 L.Ed.2d 516, 520 (1966); *United States v. Healy*, 376 U.S. 75, 82, 84 S.Ct. 553, 557, 11 L.Ed.2d 527, 534 (1964); *United States v. Monasterski*, 567 F.2d 677, 681 (6th Cir. 1977); *United States v. Allen*, 566 F.2d 1193, 1195 (3rd Cir. 1977); *United States v. Moreno*, 561 F.2d 1321, 1323 (9th Cir. 1977); *United States v. McClain*, 545 F.2d 988, 995 (5th Cir. 1977). This rule of lenity is rooted in the law's concern for the rights of the individual, and the need to provide a clear, definite, and fair warning about what constitutes criminal conduct and is therefore punishable by the loss of liberty or property. *Huddleston v. United States*, 415 U.S. at 831, 94 S.Ct. at 1271, 39 L.Ed.2d at 794; *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 375, 93 S.Ct. 1652, 1663, 36 L.Ed.2d 318, 333 (1973); *United States v. Bass*, 404 U.S. at 347–48, 92 S.Ct. at 522, 30 L.Ed.2d at 496–97; *United States v. Monasterski*, 567 F.2d at 682.

■ The principle of strict construction, and the rule of lenity that it includes, applies only where there is uncertainty or ambiguity in a criminal statute; otherwise, there is no need to resort to the rule. *Scarborough v. United States*, 431 U.S. 563, 577, 97 S.Ct. 1963, 1970, 52 L.Ed.2d 582, 592–93 (1977); *Barrett v. United States*, 423 U.S. 212, 217–18, 96 S.Ct. 498, 501–02, 46 L.Ed.2d 450, 455 (1976); *Mourning v. Family Publications Service, Inc.*, 411 U.S. at 375, 93 S.Ct. at 1663, 36 L.Ed.2d at 333; *United States v. Bass*, 404 U.S. at 348, 92 S.Ct. at 522, 30 L.Ed.2d at 497. Moreover, one cannot blindly invoke the rule of lenity as an excuse to ignore the obvious legislative intent behind a statute, or to wrench and distort it into a meaning that defies common sense. *Scarborough v. United States*, 431 U.S. at 577, 97 S.Ct. at 1970, 52 L.Ed.2d at 592–93; *Barrett v. United States*, 423 U.S. at 217, 96 S.Ct. at 501, 46 L.Ed.2d at 455; *Huddleston v. United States*, 415 U.S. at 832, 94 S.Ct. at 1272, 39 L.Ed.2d at 795; *United States v. Bass*, 404 U.S. at 350–51, 92 S.Ct. at 523–24, 30 L.Ed.2d at 498; *United States v. Campos-Serrano*, 404 U.S. at 298, 92 S.Ct. at 478, 30 L.Ed.2d at 462; *United States v. Cook*, 384 U.S. at 262–63, 86 S.Ct. at 1414–15, 16 L.Ed.2d at 520; *United States v. Standard Oil*, 384 U.S. 224, 225, 86 S.Ct. 1427, 16 L.Ed.2d 492, 494 (1966); *United States v. Healy*, 376 U.S. at 82, 84 S.Ct. at 557, 11 L.Ed.2d at 534; *United States v. McClain*, 545 F.2d at 996.

As already discussed, Dr. Block's theory that different speed zones become effective upon sight of the speed limit signs would introduce great uncertainty and indefiniteness into the statute's rule of law. By generating so many problems in determining when a specific speed zone is effective in a particular situation, for a particular motorist, that theory diverges far from the mainstream of common sense.

Not that the law is not sometimes counter-intuitive; but there is no premium upon a rule of law that baffles common sense and is nearly impossible to apply fairly and even-handedly to those who are subject to it. On the other hand, the rule that different speed zones become effective at the locations where their corresponding speed limit signs are posted, as Judge Schlesinger recognized, results in the statue being applicable to, and understandable by, all persons equally. Additionally, that rule is compatible with a common-sense understanding about the effect of the statute's commands: slower speed zones are mandatory, faster speed zones are permissive; and a motorist must reduce his speed to the slower speed zone by the time he reaches its speed limit sign, while he may increase his speed up to the faster speed zone, after he has reached its speed limit sign.

■ The absence of reported decisions interpreting Fla.Stat. § 316.183 does not mean that its meaning was unknown or not understood. It means only that, until now,

the statute's rule of law had not been articulated in a written decision. Nonetheless, the meaning and effect of the statute's rule of law have been well understood by both those who must obey it and those who enforce it. That common-sense understanding is not disproved by Dr. Block's ingenious theory. Judge Schlesinger accurately expressed the common-sense understanding of the statute's rule of law in reaching his decision; and the judgment is affirmed.