**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2019-NMCA-049**

**Filing Date: June 13, 2019**

**No. A-1-CA-36657**

**STATE OF NEW MEXICO,**

> Plaintiff-Appellee,

**v.**

**PATRICK MARTINEZ,**

> Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**Cindy M. Mercer, District Judge**

Released for Publication September 24, 2019.

Hector H. Balderas, Attorney General
Santa Fe, NM
Margaret Crabb, Assistant Attorney General
Albuquerque, NM

for Appellee

Patrick J. Martinez
Albuquerque, NM

Pro Se Appellant

## OPINION

**DUFFY, Judge.**

**{1}**     Defendant appeals his conviction for speeding, contrary to NMSA 1978, Section 66-7-301 (2002, amended 2015) after a de novo trial in district court. We affirm.

## BACKGROUND

**{2}**     Defendant was stopped and cited for speeding by an officer with the Isleta Police Department. Following his trial and conviction in magistrate court for speeding,

Defendant filed a de novo appeal in the district court. After a half-day bench trial, the district court found Defendant guilty of speeding for driving 55 miles per hour in a posted 45 mile-per-hour speed zone. On appeal to this Court, Defendant argues that the speed regulation statutes, Section 66-7-301 and NMSA 1978, § 66-7-303 (1996), are ambiguous and should be construed to allow motorists to accelerate in advance of an increased speed limit sign once the sign is visible.

**DISCUSSION**

**{3}** We consider an issue of first impression in New Mexico, at what point in relation to a speed limit sign does a speed limit become effective such that a driver can be cited for a violation of Section 66-7-301. This is a question of statutory interpretation that we review de novo. *See State v. Tarin*, 2014-NMCA-080, ¶ 6, 331 P.3d 925.

> In construing a statute, we must ascertain and give effect to the intent of the Legislature. To accomplish this, we apply the plain meaning of the statute unless the language is doubtful, ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity or contradiction, in which case the statute is to be construed according to its obvious spirit or reason. . . . While the consideration of public policy is the province of the Legislature, where a statute is ambiguous, we may consider the policy implications of varying constructions of the statute.

*State v. Tafoya*, 2010-NMSC-019, ¶ 10, 148 N.M. 391, 237 P.3d 693 (internal quotation marks and citations omitted).

**{4}** We begin by looking at the plain meaning of the speed limit statutes, Sections 66-7-301 and -303. Section 66-7-301(A) sets forth default speed limits for certain types of roads and conditions, but also states in Subsection (C) that these speed limits may be altered as authorized in Section 66-7-303(B). Section 66-7-303(B) states in relevant part "that [an altered] speed limit shall be authorized and effective when appropriate signs giving notice thereof are erected at that particular part of the highway[.]" Thus, the plain language of Section 66-7-303(B) indicates that a speed limit is effective at the point where the sign is located.

**{5}** This interpretation is supported by several provisions found in the New Mexico Department of Transportation's 2008 *Signing and Striping Manual*,[1] (the NMDOT Manual), a document issued in compliance with the Legislature's mandate that the state transportation commission "adopt a manual and specifications for a uniform system of traffic-control devices consistent with the provisions of [the Motor Vehicle Code]." NMSA 1978, § 66-7-101 (2003). The NMDOT Manual recognizes that "[u]niformity of the meaning and application of traffic control devices is vital to their effectiveness." NMDOT Manual, ch. 1, § 1.1.3. Further, in a section addressing signage and captioned, "Standardization of Location," it states:

---

[1]http://dot.state.nm.us/content/dam/nmdot/Infrastructure/SignandStripingManual.pdf

> The longitudinal displacement between a sign and the corresponding roadway element varies *from zero in the case of a speed limit sign (or most regulatory signs) that is physically placed at the point where the speed limit (or regulation) begins or ends*, to 1 mile or more in the case of an advance guide sign.

NMDOT Manual, ch. 2, § 2.1.16, at 2.1-20 (2008) (emphasis added); *see also* NMDOT Manual, ch. 2, § 2.2.2, at 2.2-6 (2008) (providing that a speed limit sign be installed "[t]o show the beginning of a new speed limit . . . at the physical location where the speed limit changes"); NMDOT Manual, ch. 2, Exhibit 2.2-C, at 2.2-7 (2008) (indicating, in a table headed "Suggested Spacing for Speed Limit Signs[,]" that for every type of road listed, the "normal placement" for speed limit signs is "at the beginning of the speed limit"). Moreover, our State Transportation Commission, the National Committee on Uniform Traffic Control Devices, the Federal Highway Administration, and the U.S. Secretary of Transportation all agree that the speed limit is effective at the point where the sign is located.[2]

**{6}** Were we to accept Defendant's argument that a speed limit becomes effective at the point where the sign can be read, we would disrupt uniformity in the application of well-established local and national practices governing the placement of speed limit signs. We decline to depart from the sound reasoning articulated by the Transportation Commission in the NMDOT Manual, given its particularized knowledge and experience in promoting uniformity of traffic control devices. Moreover, Defendant's proposed interpretation of Sections 66-7-301 and -303 would render speed limits and their boundaries subjective, based upon the unique point of view of each driver approaching a speed limit sign, thereby eliminating meaningful, standardized enforcement of speed limits throughout the state. Interpreting these statutes as Defendant suggests would produce an unworkable and absurd result. *See United States v. Block*, 452 F. Supp. 907, 909-10 (M.D. Fla.1978) ("To hold that changing traffic speed zones become effective when the posted signs become visible would result in the law being variable, uncertain, and relative to individual motorists' eyesight. The effect would be theoretically confusing, as well as practically impossible."); *see generally Tarin*, 2014-NMCA-080, ¶ 8 (rejecting a party's proposed interpretation of a statute where doing so "would produce an unworkable situation and absurd result"). For all of these reasons, we hold that "the speed limit starts at the physical location of the sign and continues to be in effect until it ends at the next different speed limit sign." *Shafron v. Cooke*, 190 P.3d 812, 814 (Colo. App. 2008) (noting that a driver's "sight[ing] of a forty mile per hour sign did not allow him to increase his speed above twenty-five miles per hour until he reached that sign").

---

2The New Mexico Transportation Commission's determination that speed limit changes take effect at the point where a speed limit sign is placed is consistent with the approach taken by the American Association of State Highway Officials in its 2009 *Manual on Uniform Traffic Control Devices* (MUTCD), *available at* https://mutcd.fhwa.dot.gov/pdfs/2009r1r2/mutcd2009r1r2edition.pdf, which is developed jointly with the Federal Highway Administration and approved by the U.S. Secretary of Transportation. *See* MUTCD § 2B.13, ¶¶ 3-4 (2009) (providing that "Speed Limit . . . signs . . . shall be located at the points of change from one speed limit to another. . . . At the downstream end of the section to which a speed limit applies, a Speed Limit sign showing the next speed limit shall be installed").

**{7}** We are similarly unpersuaded by Defendant's argument that because drivers often decelerate in anticipation of a slower speed limit, he should have been allowed to speed up in anticipation of a faster one. Defendant misapprehends that posted speed limits represent the maximum traveling speed, and as one court explained,

> [A] speed limit sign for a slower speed zone requires a motorist to have his speed reduced by the time he reaches the sign. Slower speed zones, in short, are mandatory. On the other hand, a speed limit sign indicating a faster speed zone simply means that a motorist may proceed at a faster speed than he is presently permitted once he has reached that sign. The speed limit sign for a faster speed zone does not require that a motorist be driving at the faster speed when he reaches the sign, but simply allows him to begin doing so once he has reached the sign. Faster speed zones are permissive.

*Block*, 452 F. Supp. at 910. Just as with speed limit increases, however, slower speed limits become applicable at the point that the sign is posted.

**{8}** Finally, Defendant advocates for the rule of lenity here, arguing that the speeding statute is ambiguous because it does not clearly state where any particular speed limit starts and ends. "The rule of lenity counsels that criminal statutes should be interpreted in the defendant's favor when insurmountable ambiguity persists regarding the intended scope of a criminal statute." *State v. Johnson*, 2009-NMSC-049, ¶ 18, 147 N.M. 177, 218 P.3d 863 (internal quotation marks and citation omitted). Finding no ambiguity in the relevant statutes, we reject Defendant's rule of lenity argument.

**CONCLUSION**

**{9}** For the foregoing reasons, we affirm Defendant's conviction for speeding.

**{10}  IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Chief Judge**

**KRISTINA BOGARDUS, Judge**