Bonnie SCHERR, Petitioner–Appellee,

v.

**COLORADO DEPARTMENT OF REVENUE, Respondent–Appellant.**

No. 01CA0479.

Colorado Court of Appeals,
Div. III.

May 9, 2002.

Forrest W. Lewis, P.C., Forrest W. Lewis, Denver, Colorado, for Petitioner–Appellee.

Ken Salazar, Attorney General, Robert H. Dodd, Assistant Attorney General, Denver, Colorado, for Respondent–Appellant.

Opinion by Judge DAILEY.

Respondent, Colorado Department of Revenue (department) appeals the district court judgment reversing an order revoking the driver's license of petitioner, Bonnie Scherr, for a period of three months. We affirm the district court's judgment.

## I.

Police stopped petitioner after observing her vehicle weaving. The arresting officer's report notes that petitioner exhibited certain indicia of alcohol intoxication. Petitioner consented to a test of her breath.

The test on a sample of petitioner's breath indicated her breath alcohol content (BrAC) was .103 grams of alcohol per 210 liters of breath. A second breath sample was taken and preserved for petitioner's use. Based on the result of the test conducted by the police, petitioner was given a notice of revocation of her driver's license.

Petitioner then requested an administrative hearing to challenge the revocation. At that hearing, petitioner presented evidence that the Intoxilyzer machine used to test her breath was consistently providing high readings on calibration samples. This uncontroverted evidence reflected that just before petitioner's breath was tested, the Intoxilyzer machine in question tested a known sample of .10 BrAC as .105 BrAC. It also revealed that fifteen other .10 BrAC sample calibrations conducted before and after petitioner's test each resulted in readings ranging from .105 to .109 BrAC. Thus, in sixteen consecutive calibrations, the Intoxilyzer machine's reading was high by between .005 and .009 BrAC.

Although the hearing officer stated that he was accepting at face value the evidence of the machine's consistently high BrAC readings, he nonetheless upheld the revocation. The hearing officer reasoned that, because the variation in readings was "not very extreme" and the machine was "certified" and "operating within range" or "calibration," petitioner could overcome the presumption of validity attending the test results only by conducting a retest on her other breath sample. Petitioner's evidence that the machine consistently read high, the hearing officer held, served only to establish "a very good foundation" for permitting a retest of the other sample at that late date.

Thereafter, petitioner sought review of the revocation order in the district court. The district court reversed, finding that, based upon petitioner's undisputed evidence that the Intoxilyzer machine was providing consistently inaccurate high readings, there was a "manifest insufficiency" of evidence to support the revocation order:

> When [the] machine tested the known [.10] standard solutions, all test results were at least [.105]. The only inferences available from the evidence were that the petitioner's test result was also inaccurate and at least [.005] too high, and that the petitioner's [BrAC] was actually below [.10]. Had there been tests on the standard solutions with results of [.103] or below, other inferences could be drawn and the hearing officer's conclusion would have been supported by the evidence. In this instance, the prima facie reliability accorded to test results by the certification and test processes was unquestionably rebutted and overcome by the only available evidence.

The department now appeals from that ruling.

## II.

 The department contends that the district court erred in reversing the revocation order because there was substantial evidence to support that order. We disagree.

Judicial review of driver's license revocation orders is governed by § 42–2–126(10)(b), C.R.S.2001. That statute provides that a reviewing court may reverse the department's determination only if the department (1) exceeded its constitutional or statutory authority, (2) erroneously interpreted the law, (3) acted in an arbitrary and capricious manner, or (4) made a determination that is unsupported by the evidence in the record. See Charnes v. Robinson, 772 P.2d 62, 68 (Colo.1989).

While we agree with the district court, we determine that the hearing officer's order was based on an erroneous interpretation of the law and was otherwise arbitrary and capricious under § 42–2–126(10)(b).

 In a license revocation proceeding, the burden rests upon the state to establish by a preponderance of the evidence that the licensee drove a vehicle when the licensee's breath had an alcohol concentration of .10 or more grams of alcohol per 210 liters of breath. See § 42–2–126(9)(c)(I), C.R.S.2001; Davis v. Charnes, 740 P.2d 534, 535 (Colo.App.1987)(analyzing issue under prior statute). "Intoxilyzer test results are presumed accurate if the test was conducted by a certified operator in accordance with Health Department regulations on a machine shown to be operating correctly at the time of the test." Davis v. Charnes, supra, 740 P.2d at 535. However, under § 42–4–1301(2)(b), C.R.S.2001, a licensee is entitled to "offer direct and circumstantial evidence to show that there is a disparity between what the tests show and other facts so that the trier of fact could infer that the tests were in some way defective or inaccurate." See Charnes v. Robinson, supra, 772 P.2d at 67 (quoting identical text from predecessor statute).

Contrary to the hearing officer's assumption, no statute, case, rule, or regulation limits the type of evidence that may be presented to undermine the presumption of accuracy attending Intoxilyzer test results. While a retest of a sample is certainly one way of challenging test results, it is not the only way.

Here, petitioner attempted to undermine the validity of test results by presenting undisputed evidence that, when testing a known .10 BrAC sample, the machine consistently read higher than it did with respect to her own test. However, the hearing officer erroneously interpreted the law and otherwise acted arbitrarily and capriciously in ruling that this evidence could serve no purpose other than as foundation for permitting a late retest of petitioner's BrAC. See Lawley v. Department of Higher Education, 36 P.3d 1239, 1252 (Colo.2001)(administrative action is arbitrary and capricious if administrative entity fails to give candid and honest consideration to evidence before it on which it is authorized to act in exercising its discretion).

Ordinarily, we would remand the matter for further proceedings to give the hearing officer an opportunity to consider petitioner's

evidence in a proper light and to weigh it against the evidence proffered in support of the test results obtained by the police. *See, e.g., Charnes v. Lobato*, 743 P.2d 27, 32 (Colo. 1987)(when conflicting testimony is presented in an administrative hearing, the weight to be given the testimony is for the agency to decide). *See also Charnes v. Robinson, supra*, 772 P.2d at 68 (hearing officer's decision is arbitrary and capricious if not supported by substantial evidence in the record).

However, here the hearing officer would not have to choose between, or otherwise weigh, conflicting testimony or conflicting test result evidence.

■ The department's position in this case is supported only by a presumptively accurate test result. Because a presumptively accurate test result is prima facie proof of grounds for revocation, *see Swain v. State*, 717 P.2d 507, 508 (Colo.App.1985), in many instances it can support a revocation decision even in the face of contrary evidence. *See Charnes v. Lobato, supra*, 743 P.2d at 32.

However, in our view, this case is one of those rare instances in which a prima facie case is nullified, not just contradicted, by other evidence, and consequently, the matter is subject to resolution as a matter of law rather than fact. *See Huntoon v. TCI Cablevision of Colorado, Inc.*, 969 P.2d 681, 686 (Colo.1998)(discussing directed verdict standards). *See also* Annotation, *Direction of Verdict: Effect of Explanatory or Qualifying Testimony to Nullify Prima Facie Case Made by Plaintiff*, 66 A.L.R. 1532, 1536 (1930)("By the great weight of authority, . . . the defendant, by explanatory or qualifying evidence of uncontradicted and credible witnesses, may so nullify the evidence upon which the plaintiff's case depends that it no longer constitutes a prima facie case.").

Here, the unmistakable import of petitioner's explanatory or qualifying evidence was to nullify not only a critical premise underlying a presumption of accurate test results (namely, that the machine was operating correctly), but also any conclusion that petitioner's BrAC could have been .10 or higher. Petitioner's uncontradicted evidence revealed that the Intoxilyzer consistently read known .10 BrAC samples as containing a higher

level of alcohol, and the error exceeded the amount by which petitioner's measured alcohol level exceeded the statutory maximum.

The record reflects that the hearing officer was willing to accept petitioner's evidence at face value. Accepting that evidence likewise, and considering it in light of all of the evidence in the record, we determine that reasonable people would be compelled to conclude that petitioner's true BrAC necessarily fell below .10. Because any other decision would, under the circumstances, be arbitrary or capricious, *see generally Colorado State Board of Accountancy v. Paroske*, 39 P.3d 1283, 1288–89 (Colo.App.2001), we see no need to require the hearing officer to consider the matter further.

The department contends otherwise, however, relying on various authorities. Unlike here (1) in *Swain v. State, supra*, there was no showing that the particular machine used by the police to test the driver's breath was inaccurate; and (2) in *Charnes v. Robinson, supra*, and *Charnes v. Lobato, supra*, the hearing officers were presented with evidence from different witnesses of different test results from different Intoxilyzer machines and with evidence explaining the discrepancies between the test results. Because of the dissimilar circumstances in those cases, we do not find those authorities persuasive here.

■ Nor do we consider the department's belated and unsupported argument that petitioner's evidence rests upon the fallible assumption that "true" .10 samples were in fact used to test the Intoxilyzer machine in this case. *See Board of County Commissioners v. City of Greenwood Village*, 30 P.3d 846, 849 (Colo.App.2001)(court will not consider arguments raised for the first time in reply brief or during oral argument).

In sum, although our decision rests on grounds slightly different from the district court's judgment of reversal, we nevertheless conclude that the district court's judgment was correct. *See Steamboat Springs Rental & Leasing, Inc. v. City & County of Denver*, 15 P.3d 785, 786 (Colo.App.2000)(appellate court may affirm correct judgment based on

reasoning different from that relied on by trial court).

The judgment is affirmed.

Judge NEY and Judge ROY concur.