24CA1322 Latus v State of Colo 05-08-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1322
El Paso County District Court No. 23CV31850
Honorable Amanda J. Philipps, Judge

---

Tara Eden Latus,

Plaintiff-Appellant,

v.

State of Colorado Department of Revenue, Division of Motor Vehicles,

Defendant-Appellee.

---

JUDGMENT AFFIRMED

Division A
Opinion by JUDGE DUNN
Brown and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 8, 2025

---

Tara Eden Latus, Pro Se

Philip J. Weiser, Attorney General, Bradford C. Jones, Senior Assistant
Attorney General, Danny Rheiner, Assistant Solicitor General, Denver,
Colorado, for Defendant-Appellant

¶ 1     Plaintiff, Tara Eden Latus, appeals the district court's judgment affirming the revocation of her driver's license by defendant, the Colorado Department of Revenue, Division of Motor Vehicles, based on her refusal to submit to chemical testing as required by Colorado's express consent statute.  We affirm.

## I.     Background and Procedural History

¶ 2     One summer evening, Colorado State Patrol Trooper Alvaro Acuna received a dispatch that a twelve-year-old girl had called 911 to report that her mother — later identified as Latus — "was yelling, acting weird, and swerving" while driving south on Interstate 25. The girl described the color and make of the car and its approximate location.

¶ 3     Not long after, Trooper Acuna spotted the car and saw it "travel over the clearly marked and visible white fog line and onto the right shoulder."  The car then signaled and pulled over on the right shoulder.

¶ 4     Upon contacting Latus, Trooper Acuna told Latus that he saw her weave, and Latus responded, "[Y]eah, because [my daughter] was yelling."  Trooper Acuna smelled a faint odor of alcohol coming from Latus's breath and noticed that she appeared "highly

1

confused, irritated, upset, anxious, fidgety, and restless." He also saw a child in the back seat who identified herself as Latus's daughter.

¶ 5     The trooper then spoke with the child who reported that she believed her mother had been drinking and that, as she was driving, her mother was closing her eyes, not staying in her lane, and jerking the wheel. The child was emotional and said she did not feel safe in the car with her mother.

¶ 6     After placing the child in his patrol vehicle, Trooper Acuna returned to speak to Latus. Latus first denied any alcohol or drug use but later admitted that she had taken some of her ex-husband's prescription medication the night before. Latus admitted to the trooper that she had been "weaving all over the road." When the trooper asked why, Latus said it was "because her daughter was talking to her father on the phone." While speaking with Latus, the trooper smelled a strong odor of alcohol; saw that her eyes were watery, bloodshot, and glassy; and noted that Latus was confused, disoriented, emotional, and incoherent.

¶ 7     Latus agreed to perform voluntary roadside tests. She struggled to follow the instructions on several of the tests and didn't

perform the tests as a sober person would have. Trooper Acuna arrested Latus and advised her about the express consent statute. Because he suspected drug and alcohol use, he asked if she would consent to a blood test. After Latus refused, the trooper served her with a summons for weaving, among other charges, and a notice of revocation.

¶ 8　　Latus requested an administrative hearing to challenge her revocation. At the hearing, the hearing officer admitted Trooper Acuna's reports as well as Latus's exhibits. Only Latus testified. After considering the evidence, the hearing officer found that Trooper Acuna's "initial contact" was justified and that probable cause existed to arrest her. The hearing officer rejected Latus's claim that she wasn't intoxicated but rather was suffering from posttraumatic stress disorder (PTSD) due to abuse by her husband and child. The hearing officer sustained the one-year license revocation.

¶ 9　　Latus then filed a petition for judicial review, challenging the hearing officer's conclusions that Trooper Acuna had reasonable suspicion to contact her and probable cause to arrest her. She also argued that the hearing officer failed to consider her evidence.

3

¶ 10    In a thorough written order, the district court rejected these arguments and affirmed the one-year license revocation.

## II.    Analysis

¶ 11    On appeal, Latus contends that the hearing officer erred by concluding that Trooper Acuna had either reasonable suspicion to stop her or probable cause to arrest her and by disregarding evidence that she maintains showed she was not intoxicated.  Latus also contends that the district court violated her due process rights by affirming the license revocation before she had filed her reply brief.  We consider each contention in turn.

### A.    Legal Principles and Standard of Review

¶ 12    The express consent statute requires a person to take a breath or blood test when law enforcement has probable cause to believe that the person was driving a motor vehicle while intoxicated.  § 42-4-1301.1(2)(a)(I), C.R.S. 2024.  A driver may refuse to submit to testing, but "the price of refusal is revocation of the driving privilege."  *People v. Montoya*, 2024 CO 20, ¶ 23; *see also* § 42-2-126(3)(c)(3)(I), C.R.S. 2024.

¶ 13    "In reviewing revocation proceedings, we stand in the same position as the district court."  *Jansma v. Colo. Dep't of Revenue,*

4

2023 COA 59, ¶ 18. We may reverse the Department's revocation decision "if, based on the administrative record, [we] determine[] that the Department acted in an arbitrary and capricious manner, exceeded its constitutional or statutory authority, made an erroneous interpretation of the law, made clearly erroneous factual findings, or made a determination that is unsupported by substantial evidence in the record." *Id.* at ¶ 15; *see also* § 42-2-126(11) (applying section 24-4-106, C.R.S. 2024, to review of driver's license revocation).

¶ 14 We may not disturb a hearing officer's factual findings unless they are "clearly erroneous [based] on the whole record." *Neppl v. Colo. Dep't of Revenue*, 2019 COA 29, ¶ 9 (quoting § 24-4-106(7)(b)(VII)). While we defer to the hearing officer's factual findings and credibility determinations, we review any legal determinations de novo. *Id.*

## B. Reasonable Suspicion

¶ 15 Latus challenges the hearing officer's finding that Trooper Acuna had reasonable suspicion to stop her. More specifically, Latus says that the trooper "did not observe any weaving violation" and that no witnesses credibly reported any weaving.

5

¶ 16    But Latus never denied weaving when Trooper Acuna stopped her. Indeed, Latus admitted to the trooper that she was "weaving all over the road." And in the revocation hearing, she didn't refute that admission. Instead, Latus explained that she was weaving because her daughter was yelling at her and she was "looking back at" her daughter. She admitted to the hearing officer "yeah, that was stupid." Because Latus admitted to the trooper and the hearing officer that she was weaving, we conclude that the hearing officer correctly found that Trooper Acuna had reasonable suspicion to initiate contact with Latus for a weaving violation. *See People v. Johnston*, 2018 COA 167, ¶ 17 ("Suspicion of even a minor traffic offense can provide the basis for a stop.").

¶ 17    Even beyond Latus's weaving admission, the record supports the hearing officer's reasonable suspicion finding. Latus's daughter called 911 to report that her mother was "swerving," and soon after the call, Trooper Acuna "observed the vehicle weave." These facts independently support the hearing officer's finding that Trooper Acuna had reasonable suspicion to contact Latus. *See People v. Rodriguez*, 924 P.2d 1100, 1104 (Colo. App. 1996) (upholding the

6

constitutionality of an officer's stop of a driver that "weaved . . . once"), *aff'd*, 945 P.2d 1351 (Colo. 1997).

### C.    Probable Cause

¶ 18    As we understand it, Latus challenges the hearing officer's finding that Trooper Acuna had probable cause to arrest her for driving under the influence because it "disregarded" evidence she presented that she claims showed she wasn't intoxicated, including "evidence of a negative full panel drug screen and negative [urine] test results."

¶ 19    An arrest must be supported by probable cause, which is "information showing a fair probability that the defendant committed, is committing, or is about to commit a crime." *People v. Dacus*, 2024 CO 51, ¶ 26.  Whether probable cause exists "rests on all facts and circumstances known to the police at the time of the arrest."  *People v. Brown,* 2022 CO 11, ¶ 18 (quoting *People v. Brown*, 217 P.3d 1252, 1256 (Colo. 2009)).  Because police officers "are entitled to draw appropriate inferences from circumstantial evidence," probable cause may exist despite proffered "innocent explanations" for the conduct.  *People v. Castaneda,* 249 P.3d 1119, 1122 (Colo. 2011).

¶ 20    Trooper Acuna reported that when he contacted Latus, she had a strong odor of alcohol on her breath and her eyes were "extremely" bloodshot, watery, and glassy.  He also noted that Latus admitted to taking prescription medication the night before, that she was emotional and at times incoherent, that she struggled to follow directions, and that she failed to perform the roadside maneuvers as a sober person.  The hearing officer credited these facts and circumstances in finding that Trooper Acuna had probable cause to arrest Latus.  We agree that these known facts and circumstances established probable cause to arrest Latus for driving under the influence and to request that she submit to a blood test.  *See Nefzger v. Colo. Dep't of Revenue*, 739 P.2d 224, 229 (Colo. 1987) (concluding there was probable cause to arrest the driver when the driver's breath smelled like alcohol; their eyes were bloodshot, watery, and glassy; and their performance on roadside sobriety maneuvers was poor).

¶ 21    Nor do we agree with Latus that either *Scherr v. Colorado Department of Revenue*, 49 P.3d 1217 (Colo. App. 2002), or *Schocke v. State, Department of Revenue*, 719 P.2d 361 (Colo. App. 1986), require a different result.  That's because the Department revoked

Latus's license for *refusing* chemical testing. In contrast, the drivers in *Schocke* and *Scherr* both consented to breath testing within the required two-hour window but then challenged the test results at their revocation hearings. *Scherr*, 49 P.3d at 1219; *Schocke*, 719 P.2d at 362; *see* § 42-4-1301.1(2)(a)(III) ("[T]he person must cooperate with the request such that the sample of blood or breath can be obtained within two hours of the person's driving."). Neither *Schocke* nor *Scherr* addressed whether probable cause existed to arrest a driver when the driver refused to consent to chemical testing. And neither case supports Latus's claims that Trooper Acuna lacked probable cause to arrest her or that the hearing officer was required to credit results from testing completed days after her arrest. *See* § 42-4-1301.1(2)(a)(III).

¶ 22    Pressing on, Latus says that reversal is required because the hearing officer "disregarded" evidence she presented that she maintains proved she wasn't intoxicated. The "objective evidence" included (1) the results of a urine screen test taken days after the stop; (2) criminal court records related to her ex-husband and daughter; (3) a one-page printout identifying a therapist; (4) a one-page printout about PTSD; and (5) a series of unauthenticated,

purported results from other drug and alcohol tests taken after her arrest.[1]

¶ 23  The hearing officer, however, admitted and considered Latus's evidence.  And it heard her testify that she had PTSD and was suffering a PTSD episode when Trooper Acuna contacted her.  She testified that PTSD explained her erratic behavior and emotional state.  She also testified that she was "legally blind" and wore a scleral contact lens that explained the glassy eyes.  She testified that she had been crying to explain the watery eyes.[2]  As to the smell of alcohol on her breath, she claimed she used some sort of watermelon spray that must have caused the smell.  And she pointed out that she had submitted test results from urine tests she

---

[1] As the hearing officer noted, Latus presented no evidence that she had been diagnosed with PTSD.  Nor did Latus present any expert testimony about the effects of PTSD.

[2] Latus now faults the hearing officer for failing to consider "medical literature" on her "rare, congenital ocular condition and scleral lens."  But Latus didn't include any "medical literature" in her hearing exhibits, nor did she testify to a rare ocular condition or how it might impact her failure to perform the nystagmus eye test as a sober person.  That Latus presented additional information to the district court doesn't matter.  Our review is limited to the evidence presented at the revocation hearing.  *See* § 42-2-126(9)(b), C.R.S. 2024.

took days after she drove that she claimed showed she had no alcohol or drugs in her system days earlier.[3]

¶ 24 Because the hearing officer admitted and considered Latus's evidence, what Latus really takes issue with is that the hearing officer didn't credit it. But it was for the hearing officer to consider and weigh the evidence. *See Haney v. Colo. Dep't of Revenue*, 2015 COA 125, ¶ 13. We cannot make credibility findings or substitute our judgment for that of the hearing officer. *Id.* Because the hearing officer's probable cause finding is based on the proper legal standard and supported by substantial record evidence, we are bound by it. *See id.* at ¶¶ 17, 28.

### D. Reply Brief

¶ 25 Finally, Latus argues that the district court violated her due process rights by affirming the hearing officer's revocation before receiving her reply brief.

¶ 26 Even assuming that Latus was entitled to file a reply before the court issued its ruling, we "may disregard any error or defect not affecting the substantial rights of the parties." C.A.R. 35(c). An

---

[3] No expert testified about ETG urine testing, and, though admitted, the test results were unauthenticated.

11

error affects a substantial right when "it can be said with fair assurance that the error substantially influenced the outcome." *Bly v. Story*, 241 P.3d 529, 535 (Colo. 2010) (quoting *Banek v. Thomas*, 733 P.2d 1171, 1178 (Colo. 1986)). Latus doesn't identify anything in her reply brief that would have substantially influenced the outcome had the court first reviewed it before issuing its order. Thus, any error was harmless.[4]

## III. Disposition

¶ 27 The judgment is affirmed.

JUDGE BROWN and JUDGE SCHOCK concur.

---

[4] Latus generally asserts that the district court was biased based on something that occurred in a separate custody case that the district court judge also handled. But she doesn't say how the custody case biased the judge or impacted the review of the hearing officer's decision. Without any developed argument or explanation, we are unable to address the issue further. *See Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 604 (Colo. App. 2007).