Vern T. NEFZGER, Plaintiff-Appellant,

v.

**COLORADO DEPARTMENT OF REVE-
NUE, MOTOR VEHICLE DIVISION,**
Defendant-Appellee.

No. 86SA2.

Supreme Court of Colorado,
En Banc.

June 15, 1987.

William R. Dowhan, Aurora, for plaintiff-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Anthony S. Trumbly, Asst. Atty. Gen., Denver, for defendant-appellee.

QUINN, Chief Justice.

Vern T. Nefzger appeals from a district court judgment upholding the revocation of his driver's license, pursuant to section 42–2–122.1(1)(a)(I), 17 C.R.S. (1984), for operating a motor vehicle with a blood alcohol level of 0.15 or more grams of alcohol per 210 liters of breath. He challenges the constitutionality of section 42–2–122.1(1)(a)(I) and raises several claims relating to the applicability of the statute to him under the facts of this case.[1] We affirm the judgment.

## I.

On February 19, 1984, at approximately 12:10 a.m., Officer Gary Sullivan of the Aurora Police Department observed Nefzger driving an automobile south on South Peoria Street at a speed slightly faster than other traffic. The officer followed the vehicle for five blocks and saw it weave six times to the right side of the road, kicking up snow and ice in the gutter, and cross the lane divider lines to the left on four separate occasions. When the officer stopped the vehicle and approached Nefzger, he detected a strong odor of alcoholic beverage and observed that Nefzger's eyes were bloodshot, watery, and glassy. He asked Nefzger if he had drunk anything. Nefzger responded that he had drunk four drinks of scotch and water. Officer Sullivan asked Nefzger to perform five simple physical maneuvers. Nefzger agreed to execute the maneuvers but performed them very poorly. After the tests

the officer arrested Nefzger for driving under the influence of intoxicating liquor.

Nefzger agreed to submit to a chemical test of his breath and was transported to the Aurora police station for that purpose. A breath test given at 12:57 a.m. yielded a result of .159 grams of alcohol per 210 liters of breath. Officer Sullivan charged Nefzger with failing to drive within a single lane in violation of section 42–4–907(1)(a), 17 C.R.S. (1984), and driving under the influence of intoxicating liquor in violation of section 42–4–1202(1)(a), 17 C.R.S. (1984), but did not charge him specifically with driving a vehicle with a blood alcohol content of 0.15 or more, as proscribed by section 42–4–1202(1.5)(a), 17 C.R.S. (1984).

At a revocation hearing conducted by the Department of Revenue (department), Nefzger's attorney urged the hearing officer not to consider the breath test results. The attorney told the hearing officer that after obtaining a sealed plastic envelope containing the breath sample from the Aurora Police Department he directed his secretary to mail it to an independent laboratory for analysis, and that he later received a letter from the laboratory stating that the sample was unacceptable for retesting because the sealed plastic envelope containing the sample had a small hole at the top. Nefzger's attorney, however, made no showing that Officer Sullivan or any other agent of the state failed to preserve the breath sample intact or was in any way responsible for the hole in the plastic envelope. The hearing officer denied Nefzger's request that the breath test results not be considered.

During the hearing Nefzger testified that he was not drunk on the evening in question and that his inability to perform roadside sobriety maneuvers was due to a physical disability that affected his walking. Nefzger's wife also testified that prior to his arrest Nefzger was not drunk and was swerving to avoid hitting potholes in the road. A friend of the Nefzgers, who

---

**1.** This case was originally filed in the court of appeals, but this court later accepted jurisdiction on the basis of Nefzger's constitutional challenge to § 42–2–122.1, 17 C.R.S. (1984). *See* § 13–4–110(1)(a), 6 C.R.S. (1973).

had been with them at an Elks Club banquet earlier in the evening of the arrest, testified that Nefzger was not drunk when he left the club.

At the conclusion of the evidence, the hearing officer found that Officer Sullivan had reasonable grounds to stop Nefzger and ask him to submit to chemical testing, that the test had been given within one hour of the alleged offense and showed a blood alcohol content greater than 0.15 grams of alcohol per 210 liters of breath, and that Nefzger had operated his vehicle with a blood alcohol content warranting mandatory revocation of his license under section 42–2–122.1(1)(a)(I), 17 C.R.S. (1984). The hearing officer ordered Nefzger's driver's license revoked for one year. After unsuccessfully pursuing judicial review in the Arapahoe County District Court, Nefzger filed this appeal.

## II.

■ Nefzger asserts that section 42–2–122.1(1)(a)(I), 17 C.R.S. (1984), which mandates the administrative revocation of a driver's license for driving when the amount of alcohol in the driver's blood is 0.15 or more grams of alcohol per 210 liters of breath, fails to provide adequate notice of the proscribed conduct because a driver cannot know what his precise blood alcohol is at a given moment and thus has no way to gauge whether he is driving in violation of the statute. Nefzger's constitutional challenge is devoid of merit.

We rejected the same argument raised here in *Smith v. Charnes*, 728 P.2d 1287 (Colo.1986). After noting that numerous courts in other jurisdictions have rejected similar challenges, we stated:

> [T]here is an abundance of information available that illustrates the amount of different alcoholic beverages that an individual might consume before reaching a specific blood alcohol content level.... Considering the availability of such information and the fact that the consequences of statutes like section 42–2–122.1 can be avoided by the exercise of reasonable moderation, we conclude that section 42–2–122.1 provides sufficient no-

tice of the conduct that has been determined to be unlawful to meet the requirements of due process.

728 P.2d at 1291 (Citation and footnote omitted.) We again hold that the mandatory license revocation authorized by section 42–2–122.1(1)(a)(I) is not unconstitutionally vague in violation of due process of law.

## III.

■ Nefzger also contends that the department was without authority to revoke his license pursuant to section 42–2–122.-1(1)(a)(I) because, in his view, before a driver's license can be administratively revoked the driver must be charged with violating the criminal proscriptions of section 42–4–1202(1.5)(a), 17 C.R.S. (1984), which makes it a misdemeanor to drive a vehicle with a blood alcohol of 0.15 or more grams of alcohol per 210 liters of breath. We are unpersuaded by Nefzger's argument.

Section 42–2–122.1, 17 C.R.S. (1984), provides in relevant part as follows:

> (1)(a) The department shall revoke the license of any person upon its determination that the person:

> (I) Drove a vehicle in this state when the amount of alcohol in such person's blood was 0.15 or more grams of alcohol per hundred milliliters of blood or 0.15 or more grams of alcohol per two hundred ten liters of breath at the time of the commission of the alleged offense or within one hour thereafter, as shown by chemical analysis of such person's blood or breath; or

> (II) Refused to submit to a chemical analysis of his blood, breath, saliva or urine as required by section 42–4–1202(3).

> (b) The department shall make a determination of these facts on the basis of the report of a law enforcement officer required in subsection (2) of this section, and this determination shall be final unless a hearing is requested and held. If a hearing is held, the department shall review the matter and make a final determination on the basis of evidence received at the hearing.

(c) The determination of these facts by the department is independent of the determination of the same or similar facts in the adjudication of any criminal charges arising out of the same occurrence. The disposition of those criminal charges shall not affect any revocation under this section.

(2)(a) A law enforcement officer who arrests any person for a violation of section 42-4-1202(1.5) shall forward to the department a verified report of all information relevant to the enforcement action, including information which adequately identifies the arrested person, a statement of the officer's grounds for belief that the person violated section 42-4-1202(1.5), a report of the results of any chemical tests which were conducted, and a copy of the citation and complaint filed with the court.

\*　　\*　　\*　　\*　　\*　　\*

(3)(a) Upon receipt of the report of the law enforcement officer, the department shall make the determination described in subsection (1) of this section. If the department determines that the person is subject to license revocation and if notice of revocation has not already been served upon the person by the enforcement officer as required in subsection (4) of this section, the department shall issue a notice of revocation.

(b) The notice of revocation shall be mailed to the person at the last-known address shown on the department's records and to the address provided by the enforcement officer's report if that address differs from the address of record. The notice is deemed received three days after mailing, unless returned by postal authorities.

(c) The notice of revocation shall clearly specify the reason and statutory grounds for the revocation, the effective date of the revocation, the right of the person to request a hearing, the procedure for requesting a hearing, and the date by which that request for a hearing must be made.

(4)(a) Whenever the chemical analysis results are available to the law enforcement officer while the arrested person is still in custody and where the results, if available, show an alcohol concentration of 0.15 or more grams of alcohol per one hundred milliliters of blood as shown by chemical analysis of such person's blood or 0.15 or more grams of alcohol per two hundred ten liters of breath as shown by chemical analysis of such person's breath or whenever a person refuses to submit to chemical tests as required by section 42-4-1202(3), the officer, acting on behalf of the department, shall serve the notice of revocation personally on the arrested person.

(b) When the law enforcement officer serves the notice of revocation, the officer shall take possession of any driver's license issued by this state which is held by the person. When the officer takes possession of a valid driver's license issued by this state, the officer, acting on behalf of the department, shall issue a temporary permit which is valid for seven days after its date of issuance.

(c) A copy of the completed notice of revocation form, a copy of any completed temporary permit form, and any driver's license taken into possession under this section shall be forwarded to the department by the officer along with the report required in subsection (2) of this section.

\*　　\*　　\*　　\*　　\*　　\*

(5)(a) The license revocation shall become effective seven days after the subject person has received the notice of revocation as provided in subsection (4) of this section or is deemed to have received the notice of revocation by mail as provided in subsection (3) of this section. If a written request for a hearing is received by the department within that same seven-day period, the effective date of the revocation shall be stayed until a final order is issued following the hearing; except that any delay in the hearing which is caused or requested by the subject person or counsel representing that person shall not result in a stay of the revocation during the period of delay.

\*　　\*　　\*　　\*.　　\*　　\*

(8)(c) The sole issue at the hearing shall be whether by a preponderance of the evidence a person drove a vehicle in this state when the amount of alcohol in such person's blood was 0.15 or more grams of alcohol per hundred milliliters of blood or 0.15 or more grams of alcohol per two hundred ten liters of breath at the time of the commission of the alleged offense, as shown by chemical analysis of such person's blood or breath, or refused to submit to a chemical analysis of his blood, breath, saliva, or urine as required by section 42-4-1202(3). If the presiding hearing officer finds the affirmative of the issue, the revocation order shall be sustained. If the presiding hearing officer finds the negative of the issue, the revocation order shall be rescinded.

The plain terms of the statute make clear that a driver's license may be revoked for a period of one year under the following circumstances: (1) when the driver has not requested a revocation hearing, the department may revoke a license on the basis of the law enforcement officer's report that the driver was operating the vehicle with a blood alcohol content of 0.15 or more grams of alcohol per 100 milliliters of blood as shown by chemical analysis, or 0.15 or more grams of alcohol per 210 liters of breath as shown by chemical analysis, or when the driver has refused to submit to chemical testing pursuant to the express consent provisions of section 42-4-1202(3), 17 C.R.S. (1984); and (2) when the driver has requested a revocation hearing, the department may revoke the license on the basis of the hearing officer's determination by a preponderance of the evidence that the driver operated a vehicle in this state with a blood alcohol content of 0.15 or more grams of alcohol per 100 milliliters of blood as shown by chemical analysis of the blood or 0.15 or more grams of alcohol per 210 liters of breath as shown by chemical analysis of the breath, or that the driver

has refused to submit to chemical testing as required by section 42-4-1202(3), 17 C.R.S. (1984). Contrary to Nefzger's argument, section 42-2-122.1(1)(a)(I) does not make the department's authority to revoke a driver's license dependent on the filing of a criminal charge.[2]

Moreover, Nefzger's suggested interpretation is inconsistent with the express provisions of subsection 42-2-122.1(1)(c), which states that the department's determination of the facts with respect to administrative revocation "is independent of the determination of the same or similar facts in the adjudication of any criminal charges arising out of the same occurrence." When, as here, the statutory text evidences a legislative intent to treat separately the administrative and criminal consequences of driving under the influence of intoxicating liquor, the statute should be interpreted in a manner that gives effect to the entire legislative scheme. *Travelers Indemnity Co. v. Barnes,* 191 Colo. 278, 283, 552 P.2d 300, 303 (1976); § 2-4-201(1)(b), 1B C.R.S. (1980).

Finally, we point out that section 42-2-122.1 is a remedial statute calculated to ensure public safety on the highways and should be construed liberally in accordance with the public interest. *Rinnander v. Denver Milk Producers,* 114 Colo. 506, 511-12, 166 P.2d 984, 987 (1946); *Irey v. Nielson,* 716 P.2d 486, 488 (Colo.App.1986); § 2-4-201(1)(e), 1B C.R.S. (1980). To condition revocation under section 42-2-122.1 upon the filing of a criminal charge for violating section 42-4-1202(1.5)(a) would contravene the manifest legislative objective of promoting public safety by revoking the driving privileges of those who operate motor vehicles when under the influence of intoxicating liquor or when their blood alcohol content was 0.15 or more regardless of whether criminal charges are filed as a result of the same conduct and independently of the outcome of those criminal charges.

---

**2.** Although Nefzger was not charged with violating section 42-4-1202(1.5)(a), 17 C.R.S. (1984), the evidence in the record indicates that he could have been charged with violating that statute and that the police officer's report con-

tained sufficient information to provide the department with a basis for concluding that Nefzger was driving with a blood alcohol content of 0.15 or more.

We thus conclude that the department had the statutory authority to revoke Nefzger's driver's license even though he may not have been charged with the related criminal offense of driving a motor vehicle in violation of section 42–4–1202(1.-5)(a).

## IV.

Nefzger next claims that there was no probable cause for the police officer's initial stop and that consequently his subsequent arrest and license revocation were constitutionally infirm in violation of due process.[3] This claim proceeds from a faulty premise to a similarly faulty conclusion.

Probable cause to arrest is not required for a motor vehicle stop. A police officer may stop a motorist for the purpose of investigating the circumstances of the motorist's driving behavior when the officer has a *reasonable suspicion* that the driver has committed a traffic violation. *E.g., People v. Carlson,* 677 P.2d 310 (Colo. 1984). In this case, Officer Sullivan observed Nefzger "weaving" from side to side over a distance of five blocks before he stopped him. This erratic driving behavior provided Officer Sullivan with a reasonable suspicion that Nefzger had committed a traffic violation and thus justified the officer in stopping Nefzger in order to investigate the circumstances of his driving.

During the course of the stop the officer detected a strong odor of alcoholic beverage on Nefzger's breath, heard Nefzger tell him that he had consumed four drinks of scotch and water, observed that Nefzger's eyes were bloodshot, watery, and glassy, and further observed Nefzger's poor performance of the roadside sobriety maneuvers. The information acquired by Officer Sullivan during the valid investigatory stop provided him with probable cause to arrest Nefzger for driving under the influence of intoxicating liquor. Under these circumstances, the offi-

cer was fully justified in requesting Nefzger to submit to chemical testing of his breath. § 42–4–1202(3)(a), 17 C.R.S. (1984). The subsequent revocation of Nefzger's license was predicated on his blood alcohol content of .159 and did not violate due process of law.

## V.

Nefzger argues that the results of the chemical test of his breath should not have been admitted into evidence at the revocation hearing because he never had the opportunity to have the sample retested. We again reject Nefzger's claim.

The basis for a license revocation pursuant to section 42–2–122.1(1)(a)(I) is, as relevant here, a determination that the driver operated a motor vehicle with a blood alcohol content equal to or greater than 0.15 grams of alcohol per 210 liters of breath at the time of the commission of the alleged offense or within one hour thereafter as shown by chemical analysis of the driver's breath. While the licensee at a revocation hearing must be accorded the opportunity to contest the results of chemical testing performed at the request of the arresting officer, *see Mameda v. Colorado Department of Revenue,* 698 P.2d 277 (Colo.App. 1985), the state of Colorado did provide Nefzger with such an opportunity in this case. Nefzger concedes that the Aurora Police Department provided his attorney with a breath sample for purposes of retesting. This breath sample, so far as the record shows, was intact and fully capable of retesting at that time. Nefzger's attorney acknowledged at the revocation hearing that he directed his secretary to mail the sample to a laboratory, and that he first learned that the sample could not be retested only when the laboratory sent him a letter stating that the sample had not arrived intact and hence could not be retested. There is simply nothing in the record to indicate that Officer Sullivan, who arrested Nefzger and arranged for the

---

**3.** Nefzger also states in his brief that the initial stop by the officer and the subsequent revocation of his license denied him equal protection of the laws. However, he fails to articulate any legal argument in support of his equal protection claim. Under these circumstances we decline to discuss that issue.

chemical testing of his breath, or the officer who performed the test were in any way responsible for the small hole in the envelope containing Nefzger's breath sample. Since there was no showing that the nonavailability of the breath sample for retesting was in some way attributable to the state, there is no basis to conclude that the department was somehow instrumental in denying Nefzger a fair opportunity to contest the fact that he was driving a vehicle when the amount of alcohol in his blood was 0.15 or more grams per 210 liters of breath as shown by chemical analysis of his breath within one hour after the driving offense.

## VI.

We turn to Nefzger's assertion that the hearing officer acted arbitrarily and capriciously in revoking his license. We again find Nefzger's challenge lacking in merit.

The sole issue at the revocation hearing was whether it was established by a preponderance of the evidence that Nefzger drove a vehicle when the amount of alcohol in his blood was 0.15 or more grams of alcohol per 210 liters of breath. § 42–2–122.1(8)(c), 17 C.R.S. (1984). Although Nefzger argues that the test results in his case, which showed a blood alcohol content of 0.159, do not support a conclusion that his blood alcohol equaled or exceeded 0.15 grams per 210 liters of breath, in that such tests have a ten percent margin of error and his blood alcohol content could thus have been less than 0.15, he does not cite any authority in support of his argument and there is nothing in the record to suggest that the test results were other than accurate.

Furthermore, Nefzger's "margin of error" argument was considered by the court of appeals and rejected in *Swain v. State*, 717 P.2d 507 (Colo.App.1985), where the court pointed out that subsections (1)(a) and (8)(c) of section 42–2–122.1 "indicate the General Assembly's intent that the Department rely on the results of the chemical analysis, at least to the point that it can be considered prima facie proof that blood alcohol concentration was in excess of the statutory standard." *Id.* at 508. The court also observed that any margin of error "could, of course, be considered by the hearing officer to determine the weight to be accorded the test results." *Id.* We agree with this reasoning of the court of appeals.

The evaluation of the credibility of witnesses and the weight to be given their testimony were matters within the prerogative of the hearing officer. *See Davis v. Colorado Department of Revenue*, 623 P.2d 874, 877 (Colo.1981); *Creech v. State*, 190 Colo. 174, 176, 544 P.2d 633, 634 (1976). In this case there is ample evidence to support the hearing officer's determination that Nefzger was driving a motor vehicle with a blood alcohol content of 0.15 or more. Far from being arbitrary or capricious, the order of revocation was fully supported by substantial evidence when the record is considered as a whole. *See* § 24–4–106(7), 10 C.R.S. (1982).

The judgment is accordingly affirmed.