Frederick John SHAFRON,
Plaintiff–Appellant,

v.

M. Michael COOKE, Executive Director,
Department of Revenue, State of
Colorado, Defendant–Appellee.

No. 07CA0504.

Colorado Court of Appeals,
Div. III.

June 12, 2008.

Declan Joseph O'Donnell, P.C., Declan J. O'Donnell, Castle Rock, Colorado, for Plaintiff–Appellant.

John W. Suthers, Attorney General, Robert H. Dodd, Jr., Assistant Attorney General, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge CASEBOLT.

Plaintiff, Frederick John Shafron, appeals the district court's order affirming the revocation of his driver's license by defendant, the Colorado Department of Revenue (Department), for refusing to submit to testing as required by section 42–2–126, C.R.S.2007, the express consent law. We affirm.

A police officer stopped plaintiff's vehicle because he was traveling thirty-two miles per hour in a twenty-five mile per hour zone. Upon contacting plaintiff, the officer noticed that plaintiff's speech was slurred, his movements were unsteady, and he smelled strongly of alcohol. Upon being asked, plaintiff admitted drinking alcohol that evening, although he "didn't know" how much.

The police officer asked plaintiff to complete a set of roadside sobriety tests, but plaintiff refused. The officer then placed plaintiff under arrest for driving under the influence (DUI) and advised plaintiff of his obligations under the express consent law. Plaintiff refused to complete a breath or blood test. The officer issued a notice of revocation of plaintiff's license.

Plaintiff requested an administrative hearing and gave notice to the Department that he wanted the officer present during the hearing. However, the officer filed a request to appear at the revocation hearing by telephone, which was granted.

At the revocation hearing, the hearing officer overruled plaintiff's objection to telephonic testimony by the police officer. Plaintiff's counsel cross-examined the officer, and afterward the hearing officer asked if plaintiff would testify. Counsel replied, "Let me talk to him for a minute ... turn off your machine there," referring to the hearing officer's recorder. The hearing officer turned off the recorder, but failed to restart it when testimony resumed.

The hearing officer adopted the Department's allegations as findings of facts and upheld the revocation of plaintiff's license. Plaintiff appealed his revocation to the district court. The court affirmed the revocation order, and this appeal followed.

## I. Record of Hearing

■ Plaintiff contends that the failure of the hearing officer to record the entire hearing requires reversal. We disagree.

■ Although review of the Department's determination calls for a review of the record, the absence of a complete transcript, standing alone, does not mandate the reversal of an administrative order. *See Guynn v. State*, 939 P.2d 526, 528 (Colo.App.1997) (absence of transcript does not meet the statutory review requirements as a basis for reversal); *Cop v. Charnes*, 738 P.2d 1200, 1202 (Colo.App.1987) (reversal not appropriate merely because of lack of transcript); *see also Schaffer v. Dist. Court*, 719 P.2d 1088, 1089–90 (Colo.1986) (section 24–4–106(6), C.R.S.2007, does not mandate that a complete typewritten transcript of the evidentiary phase of the proceedings before the agency be included as part of the record on review).

In *Goodwill Industries v. Industrial Claim Appeals Office*, 862 P.2d 1042, 1046 (Colo.App.1993), a division of this court held that "[e]ven if there are some omissions in the transcript, if the relevant portions of the transcript are sufficient to allow review of the dispositive issues on appeal, the record is not insufficient to permit review."

Here, as plaintiff acknowledges, the incomplete transcript resulted from a mistake. Plaintiff does not assert spoliation. Therefore, there is no presumption that the remainder of the transcript would be exculpatory. *See Cop*, 738 P.2d at 1202 (if spoliation has occurred, court must entertain rebuttable presumption that transcript would have supported driver's factual assertions).

The record includes the police officer's extensive written report, the officer's testimony, and plaintiff's cross-examination of the officer. The record also includes the hearing officer's notes and the rationale for his decision, based on the evidence presented at the hearing. Plaintiff does not contend that the hearing officer's notes are incorrect or so vague as to make it impossible to discern plaintiff's testimony explaining his actions or his arguments in support of his position. Additionally, plaintiff points to no specific

evidentiary facts that were presented at the hearing that are missing from either the partial transcript or the hearing officer's notes.

In addition, plaintiff's challenges do not involve evidentiary issues or the factual support for the hearing officer's decision. Instead, they involve issues of law. Under these circumstances, we conclude that the record is sufficient for review, and therefore reject plaintiff's contention.

## II. Change in Speed Limit

■ Plaintiff asserts that the police officer lacked reasonable suspicion to stop his vehicle. Specifically, plaintiff acknowledges that he was traveling at thirty-two miles per hour in what was marked as a twenty-five mile per hour zone, but he contends that, because he could see the speed limit sign ahead indicating an increase in the speed limit to forty miles per hour, his acceleration from twenty-five to thirty-two was legal. We disagree.

■ Under section 42–2–126(10)(b), C.R.S. 2007, a reviewing court may reverse the Department's revocation action if, based on the record, the Department has exceeded its constitutional or statutory authority, erroneously interpreted the law, acted in an arbitrary and capricious manner, or made a determination that is not supported by the evidence in the record. *Scherr v. Colo. Dep't of Revenue*, 49 P.3d 1217, 1219 (Colo.App.2002).

Here, the issue presents a question of law concerning when a speed limit starts or ends. If plaintiff was violating a speed limit at the time the officer observed him, the officer was entitled to conduct an investigatory stop because he had a reasonable suspicion that plaintiff had committed a traffic violation. *See People v. Ramos*, 13 P.3d 295, 297 (Colo. 2000).

Section 42–4–1101(1), C.R.S.2007, provides: "No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing." Section 42–4–1101(2)(h), C.R.S.2007, states in pertinent part that the following speeds shall be lawful: "Any speed not in excess of a speed limit designated by an official traffic control device."

Section 42–4–1102(2) & (3), C.R.S.2007, as pertinent here, provide that county or municipal authorities may declare a reasonable and safe speed limit on streets within their jurisdictions, and that such speed limits become effective when appropriate signs are erected that give notice of the limits.

These provisions, by themselves, do not state at what point on the road a speed limit takes effect. However, in section 42–4–104, C.R.S.2007, the General Assembly adopted the Manual on Uniform Traffic Control Devices for Streets and Highways (MUTCD). Section 2B.18 of MUTCD (2003) provides in pertinent part, "Speed Limit signs, indicating speed limits ... shall be located at the points of change from one speed limit to another. At the end of the section to which a speed limit applies, a Speed Limit sign showing the next speed limit shall be installed."

Reading the MUTCD provision in conjunction with the other statutes noted, we conclude that once a speed limit sign is erected, the speed limit starts at the physical location of the sign and continues to be in effect until it ends at the next different speed limit sign. *Cf. United States v. Block*, 452 F.Supp. 907, 909–10 (M.D.Fla.1978)("To hold that changing traffic speed zones become effective when the posted signs become visible would result in the law being variable, uncertain, and relative to individual motorists' eyesight. The effect would be theoretically confusing, as well as practically impossible."); *Wood v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 45 Wash.2d 601, 610, 277 P.2d 345, 350 (1954) (driver did not have to observe the twenty-five mile per hour speed restriction before reaching the actual location of the sign).

Here, plaintiff was traveling at thirty-two miles per hour while wholly within a twenty-five mile per hour zone. Accordingly, he was exceeding the posted speed limit and was thus committing a traffic infraction that justified the stop of his vehicle by the police officer. Plaintiff's sight of the forty mile per hour sign did not allow him to increase his speed above twenty-five miles per hour until he reached that sign.

III. Police Officer's Telephonic Testimony

█ Plaintiff contends the hearing officer erred in allowing the police officer to testify telephonically. We disagree.

Section 42–2–126(8)(e)(II), C.R.S.2007, states in pertinent part that "[a] n officer required to appear at a hearing may, at the discretion of the hearing officer, appear in real time by telephone or other electronic means in accordance with section 42–1–218.5."

Section 42–1–218.5(1), C.R.S.2007, states in pertinent part that "at the discretion of the department, any hearing held by the department pursuant to this title may be conducted in whole or in part, in real time, by telephone or other electronic means."

Here, the police officer timely submitted his request to appear by telephone. In his request, he listed his reasons as excessive distance, road construction, and assignment to the graveyard shift. The officer verified during his testimony that he would have to drive an excessive distance to reach the hearing and that he was currently assigned to the graveyard shift. These reasons amply justify the officer's telephonic appearance.

Accordingly, we perceive no abuse of discretion.

The order is affirmed.

Judge RUSSEL and Judge J. JONES concur.