Stacey M. BALDWIN, Plaintiff–
Appellant,

v.

Roxy HUBER, Executive Director of the
Motor Vehicle Division, Department of
Revenue, State of Colorado, Defendant–
Appellee.

No. 08CA2492.

Colorado Court of Appeals,
Div. III.

Nov. 25, 2009.

Robert T. Bettenberg, Dineen T. Deel, Denver, Colorado, for Plaintiff–Appellant.

John W. Suthers, Attorney General, Ceri Williams, Assistant Attorney General, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge MILLER.

Petitioner, Stacey M. Baldwin (licensee), appeals from the district court judgment affirming the revocation of her driver's license by the Department of Revenue (Department) for driving with an excessive breath alcohol content (BAC). Contrary to licensee's arguments on appeal, we conclude that the evidence at the revocation hearing was sufficient to support the hearing officer's conclusions that there was reasonable suspicion to justify the initial traffic stop and probable cause to justify her later arrest in this incident. Accordingly, we affirm.

## I. Factual and Procedural Background

After licensee was arrested for driving under the influence of alcohol (DUI) on November 30, 2007, she took a breath test at the police station within two hours of the time of driving. The breath test showed licensee's BAC to be .173 grams of alcohol per two hundred ten liters of breath, more than twice the statutory limit for revocation, and she was served with a notice of revocation on that basis. *See* § 42–2–126(2)(b), C.R.S.2009; *see also* § 42–1–102(8.5)(b), C.R.S.2009.

At the revocation hearing, licensee challenged the basis of both the initial stop of her vehicle and the DUI arrest that followed. Because licensee did not subpoena or otherwise request the presence of any of the police officers involved, none of them appeared for the hearing. Nevertheless, the documents submitted to the Department by the arresting officer were admitted into evidence without objection at the outset of the hearing.

In the affidavit form, the arresting officer stated that licensee was "stopped for a traffic violation." He further stated that, upon contact with her, she had an odor of an alcoholic beverage on her breath, had red and watery eyes, and stated that she had "had two beers." In signing this form, the arresting officer also swore, under penalty of perjury, that these facts were true to the best of his knowledge and belief.

In the criminal summons, the arresting officer identified the initial traffic violation as weaving. He further specified the time and place of this violation, indicating that it occurred over a particular eight-block distance as licensee was driving westbound on 120th Avenue. The arresting officer also signed an affirmation on this document that he had probable cause to believe that licensee committed the weaving violation, as well as the DUI offense.

After the hearing officer denied licensee's motion to dismiss based on the alleged insufficiency of this documentary evidence, licensee testified concerning this incident. In particular, she testified that the arresting officer arrived at the scene several minutes after other police officers had stopped her, and she specifically denied any weaving and testified that she had driven for only two blocks.

Following the hearing, the hearing officer ordered the revocation, ruling that the totality of the evidence established a reasonable basis for the initial police contact, sufficient probable cause for her arrest and testing, and ultimately that she had driven with a BAC of .08 or higher. As to the initial stop, the hearing officer found by a preponderance

of the evidence that licensee was indeed weaving, crediting the factual assertions made by the arresting officer in the documentary evidence. The hearing officer also credited licensee's testimony that she may not have had both hands on the wheel because she was smoking a cigarette and that she was upset and crying after a fight with her husband, but he did not find her testimony denying weaving to be persuasive, noting the high degree of alcohol impairment shown by the breath test results.

On review, the district court rejected licensee's arguments and upheld the revocation, and this appeal followed.

## II. Standard of Review

Under section 42–2–126(9)(b), C.R.S.2009, a reviewing court may reverse the Department's revocation action only if the court determines that the Department exceeded its constitutional or statutory authority, erroneously interpreted the law, acted in an arbitrary and capricious manner, or made a determination that is unsupported by the evidence in the record. *See also* §§ 24–4–106(7), 42–2–126(11), C.R.S.2009.

■ To determine that a hearing officer's decision was arbitrary and capricious under this statutory standard, a reviewing court must be convinced from the record as a whole that there was not substantial evidence to support the hearing officer's decision. *Charnes v. Robinson,* 772 P.2d 62, 68 (Colo. 1989). Moreover, the determinations concerning the credibility of the witnesses, the weight to be given to the evidence, and the resolution of any evidentiary conflicts are factual matters solely within the province of the hearing officer to decide as the trier of fact. *See Charnes v. Lobato,* 743 P.2d 27, 32–33 (Colo.1987); *Brodak v. Visconti,* 165 P.3d 896, 898 (Colo.App.2007).

■ We are in the same position as the district court in reviewing the Department's action in the revocation proceedings under the administrative record. We review conclusions of law de novo. *Meyer v. State,* 143 P.3d 1181, 1184, 1187 (Colo.App.2006).

## III. Challenges to Stop and Arrest

Licensee contends that the revocation must be reversed because there was "no reliable trustworthy evidence" in the administrative record to support the hearing officer's conclusion that there was reasonable suspicion for the initial contact and ultimately probable cause for her DUI arrest. To the contrary, in our view there was sufficient evidence to sustain both of these conclusions.

A licensee may properly raise issues concerning the legality of the initial investigatory stop and the subsequent DUI arrest in driver's license revocation proceedings under section 42–2–126. *See Peterson v. Tipton,* 833 P.2d 830, 831 (Colo.App.1992); *Wallace v. Dep't of Revenue,* 787 P.2d 181, 182 (Colo. App.1989); *see also Meyer,* 143 P.3d at 1185–86.

### A. Reasonable Suspicion for Stop

■ An investigatory stop of a motor vehicle is permissible when a police officer has a reasonable suspicion that the driver has committed a traffic violation, such as weaving. *Nefzger v. Colo. Dep't of Revenue,* 739 P.2d 224, 229 (Colo.1987); *Wallace,* 787 P.2d at 183. Thus, if licensee was seen actually committing the traffic violation of weaving, the initial stop would be justified under the reasonable suspicion standard on that basis. *See Shafron v. Cooke,* 190 P.3d 812, 814 (Colo.App.2008).

■ Here, in weighing the evidence presented, the hearing officer found that licensee did in fact commit the traffic violation of weaving. Although licensee denied any weaving, the hearing officer did not find her testimony to be credible in this regard. We have no basis on review for disturbing the hearing officer's finding of credibility, which was a matter solely for the hearing officer as the trier of fact. *See Lobato,* 743 P.2d at 32–33.

Thus, the issue becomes whether the factual assertions made by the arresting officer in the documentary evidence can constitute sufficient evidentiary support for the hearing officer's finding that licensee was weaving and was stopped on that basis.

Because the arresting officer did not testify, his assertions in the documentary evidence were hearsay. These assertions concerning licensee's driving were also conclusory, and there is no indication in the documentary evidence whether his assertions that licensee was weaving were based on his own observations of licensee's driving as the stopping officer or whether they were based instead on information from fellow police officers making the initial stop. Nevertheless, the hearing officer credited this evidence, and we conclude it was sufficiently reliable and trustworthy to support his factual finding that licensee was weaving.

■ A factual finding in a driver's license revocation case may properly be established by hearsay evidence alone without violating a licensee's due process rights, as long as the hearsay evidence is sufficiently reliable and trustworthy, and possesses probative value commonly accepted by reasonable and prudent persons in the conduct of their affairs. *Colo. Dep't of Revenue v. Kirke,* 743 P.2d 16, 21 (Colo.1987).

In *Kirke,* hearsay evidence from a police officer obtained from a fellow officer that the licensee was the driver was held to meet this test, despite the unknown original basis for this allegation, because it was made by a law enforcement officer in the course of his duties and because the licensee had the right to subpoena the police officers. *Id.* at 19, 21–22. Moreover, in *Colorado Division of Revenue v. Lounsbury,* 743 P.2d 23 (Colo. 1987), hearsay evidence from a non-appearing police officer as to the time of driving was similarly held to meet this test, notwithstanding conflicting testimony by the licensee. *Id.* at 25–26.

In this case, the hearsay assertions of the arresting officer that licensee was stopped for weaving are signed and sworn, and were made by him in the course of his duties as a police officer. Licensee also had the right to subpoena this officer or any of the other police officers involved, but failed to do so. Under these circumstances, this hearsay evidence also meets the applicable test to be considered sufficiently reliable and trustworthy to support the hearing officer's factual

findings. *See Kirke,* 743 P.2d at 21–22; *Lounsbury,* 743 P.2d at 25–26.

Finally, in view of the finding that licensee was stopped for committing the traffic violation of weaving, the initial investigatory stop was justified under the reasonable suspicion standard. *See Nefzger,* 739 P.2d at 229; *Wallace,* 787 P.2d at 183; *see also Shafron,* 190 P.3d at 814.

### B.   Probable Cause for Arrest

■ We also reject licensee's argument that the evidence was insufficient to establish probable cause for her DUI arrest and the request for testing.

■ The police have probable cause to arrest a driver for committing an alcohol-related driving offense when the facts and circumstances known to the police are sufficient to warrant the belief by a reasonable and prudent person that the driver has committed such an offense. Absolute certainty that the offense has been committed is not necessary, and the police are entitled to draw appropriate inferences from circumstantial evidence even though the evidence might also support other inferences. *People v. Schall,* 59 P.3d 848, 851–52 (Colo.2002).

Here, as previously discussed, the hearing officer properly found that licensee was stopped for committing the traffic violation of weaving. The hearing officer also credited the observations made by the arresting officer in the affidavit form that, upon contact, licensee had an odor of an alcoholic beverage on her breath, had red and watery eyes, and admitted having consumed some alcohol that evening.

In our view, this evidence of improper driving and alcohol impairment was sufficient to provide the arresting officer with probable cause to believe that licensee had also committed a DUI offense. Thus, licensee's arrest and the request to submit to alcohol testing were fully justified under the record here. *See Nefzger,* 739 P.2d at 229; *Herman v. Dep't of Revenue,* 870 P.2d 628, 630 (Colo. App.1994); *see also Schall,* 59 P.3d at 851–52.

Moreover, it is undisputed that the results of the breath test then taken by licensee

showed that her BAC was excessive. Consequently, the hearing officer's ultimate finding that licensee drove with an excessive BAC is supported by substantial evidence in the record as a whole. *See Peterson,* 833 P.2d at 832; *see also Robinson,* 772 P.2d at 68–69.

Thus, on this record, the Department properly revoked licensee's driver's license, and the district court properly upheld the revocation. *See* § 42–2–126(9)(b).

In view of this disposition of the issues, we need not address the remaining contentions of the parties.

We do not reach the issue addressed by the special concurrence concerning the applicability of the exclusionary rule to license revocation proceedings. Whether the exclusionary rule is an appropriate remedy for an alleged violation of a licensee's constitutional rights has not been raised by any party, and the resolution of that issue is unnecessary given our conclusion that reasonable suspicion and probable cause were present.

The judgment is affirmed.

Judge ROY concurs.

Judge FURMAN specially concurs.

Judge FURMAN specially concurring.

I agree with the majority that the Department of Revenue properly revoked licensee's driver's license. I write separately, however, because I disagree with the majority's premise that in civil driver's license revocation proceedings, a licensee may properly raise issues concerning the legality of the initial investigatory stop.

The majority follows *Peterson v. Tipton,* 833 P.2d 830 (Colo.App.1992), which concluded that evidence of the driver's intoxication may be challenged in driver's license revocation proceedings when the arresting officer lacks reasonable suspicion to initiate the initial stop. The division reasoned that the then-in-effect express consent statute, which required an officer to have probable cause for a driving under the influence arrest before requesting a driver to submit to alcohol testing, "by implication" required the arresting officer to have reasonable suspicion for the initial stop. 833 P.2d at 831. I disagree with the division in *Peterson,* however, because the court-created exclusionary rule should not apply in civil driver's license revocation proceedings, and Colorado's driver's license revocation statutes do not require the arresting officer to have reasonable suspicion for the initial stop.

## I. The Exclusionary Rule

"The exclusionary rule is a judicially created remedy intended to protect the constitutional right of privacy by deterring illegal police conduct." *Ahart v. Colorado Dep't of Corr.,* 964 P.2d 517, 519 (Colo.1998). The rule, applied in state criminal trials, excludes evidence from trial that the police obtained by violating a defendant's Fourth Amendment constitutional rights. *Id.* at 519–20.

The United States Supreme Court, however, instructs states to apply the rule in civil proceedings "only where its deterrence benefits outweigh its 'substantial social costs.' " *Pennsylvania Bd. of Prob. & Parole v. Scott,* 524 U.S. 357, 363, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) (quoting *United States v. Leon,* 468 U.S. 897, 907, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). In *Ahart,* the Colorado Supreme Court explained:

The assessment of the deterrent benefits requires a fact-specific analysis that usually involves two considerations: (1) whether the illegal agency conduct is "inter-sovereign" or "intra-sovereign"; and (2) whether the proceedings may be characterized as "quasi-criminal."

An intra-sovereign action occurs when the same governmental agency that committed the constitutional violation seeks to use the illegally obtained evidence. An intra-sovereign action supports the application of the exclusionary rule because the exclusion of the evidence "punishes" the agency for its unlawful actions. On the other hand, when a violation is inter-sovereign, that is, when the agency that committed the violation is not the same entity seeking to introduce the evidence, applying the rule results in only marginal deterrence because the punishment imposed upon a different agency is indirect.

Just as the intra-sovereign nature of a violation supports the application of the exclusionary rule by increasing the likelihood that the rule will result in deterrence, so does classifying the civil proceeding as quasi-criminal or punitive in nature. A proceeding is quasi-criminal if it provides for punishment but is civil in form.

964 P.2d at 520 (citation omitted).

The United States Supreme Court has "repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials." *Pennsylvania Bd. of Prob. & Parole*, 524 U.S. at 363, 118 S.Ct. 2014 (exclusionary rule does not apply to parole revocation proceedings); *INS v. Lopez–Mendoza*, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (exclusionary rule does not apply to civil deportation proceedings); *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (exclusionary rule does not apply in civil tax proceedings); *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (exclusionary rule does not apply to grand jury proceedings).

I conclude extending the exclusionary rule to civil driver's license revocation proceedings has minimal deterrence benefits that do not outweigh the substantial social costs of excluding evidence relevant to driving under the influence of alcohol. Individuals driving under the influence of alcohol pose a great danger to the public, and restrictions on the state's ability to remove such individuals from its highways carry great costs to society. *See Powell v. Sec'y of State*, 614 A.2d 1303, 1307 (Me.1992). Section 42–2–126(1)(a), C.R.S.2009, states one purpose of the revocation statute is to "provide safety for all persons using the highways of this state by quickly revoking the driver's license of any person who has shown himself or herself to be a safety hazard by driving with an excessive amount of alcohol in his or her body."

Moreover, driver's license revocation proceedings are inter-sovereign civil proceedings. *See Nefzger v. Colo. Dep't of Revenue*, 739 P.2d 224, 228 (Colo.1987)(driver's license revocation statute is a remedial statute calculated to ensure public safety on the highways, and the statute evidences a legislative intent to treat separately the administrative and criminal consequences of driving under the influence of intoxicating liquor).

Finally, the deterrence benefits of extending the exclusionary rule to driver's license revocation proceedings are minimal because the application of the rule in criminal trials already serves to deter unconstitutional stops by police. *Scott*, 524 U.S. at 364, 118 S.Ct. 2014 (application of the rule in criminal trials already deters unconstitutional searches).

Numerous other state courts share my conclusion that the exclusionary rule should not extend to driver's license revocation proceedings. *Nevers v. State*, 123 P.3d 958 (Alaska 2005); *Fishbein v. Kozlowski*, 252 Conn. 38, 743 A.2d 1110 (1999); *Martin v. Kansas Dep't of Revenue*, 285 Kan. 625, 176 P.3d 938 (2008); *Motor Vehicle Admin. v. Richards*, 356 Md. 356, 739 A.2d 58 (1999); *Riche v. Dir. of Revenue*, 987 S.W.2d 331 (Mo.1999); *Chase v. Neth*, 269 Neb. 882, 697 N.W.2d 675 (2005); *Lopez v. Dir.*, 145 N.H. 222, 761 A.2d 448 (2000); *Beller v. Rolfe*, 194 P.3d 949 (Utah 2008).

*Nefzger* does not lead to a different conclusion. While *Nefzger* stated police officers must have reasonable suspicion to stop a motorist, the opinion did not identify the exclusionary rule as a remedy in driver's license revocation proceedings for stops conducted without reasonable suspicion. 739 P.2d at 229. *Nefzger*, like *Peterson*, preceded *Ahart*, and thus did not apply factors identified in *Ahart* to determine whether to apply the exclusionary rule to civil proceedings.

## II. Colorado's Driver's License Revocation Statutes

Colorado driver's license revocation statutes do not require the exclusionary rule be applied in driver's license revocation proceedings. The revocation statute, section 42–2–126(5), C.R.S.2009, requires officers to have "probable cause" to believe a driver should be subject to revocation proceeding "for excess BAC or refusal." Further, the expressed consent statute, section 42–4–1301.1(2)(a)(I), C.R.S.2009, clarifies that the "probable cause" necessary to require testing is an officer's belief "the person was driving a

motor vehicle" while under the influence of alcohol or drugs.

Moreover, these statutes do not mandate a reasonable suspicion standard for an officer stopping DUI suspects and do not mandate the exclusionary rule as a remedy in driver's license revocation proceedings when an officer lacks such reasonable suspicion.

Thus, I conclude that in civil driver's license revocation proceedings, a defendant may not challenge the legality of the initial investigatory stop.