Judge FOX dissenting.
¶ 35 Because I conclude that the revocation order violated Hanson's rights to due process and to a full and fair hearing, and because the majority extends Francen v. Colorado Department of Revenue, 2012 COA 110, ¶ 45, 411 P.3d 693, beyond a traffic stop without probable cause to a warrantless home entry-without exigent circumstances-resulting in taking the home's resident into custody, I must respectfully dissent. Instead, I would reverse the district court's judgment and remand for further proceedings. Although the majority opinion recites most of the operative facts, because my analysis largely concerns the entry into the home, I recite a few additional relevant facts below.
I. Additional Background
¶ 36 Deputy Ashby's report documents that he "observed the front door [of Hanson's home] to be open" and that he "pushed open the door and made announcements." He then entered fifteen to twenty feet into the home, without a warrant and without any exigency, and proceeded to question Angela Nylund, the first person he encountered. The deputy commanded that she summon Hanson. When Hanson appeared, Deputy Ashby began to question him, and after Hanson refused to answer further questions, the deputy placed him "into protective custody" and removed him from the home. The report *8 does not say why Deputy Ashby found it appropriate or necessary to enter the home without being invited in by Hanson or by Ms. Nylund. The report also does not indicate when, or even why, Deputy Hanson decided obtaining a warrant to search the home or to secure Hanson was not necessary or feasible.
¶ 37 Despite the hearing officer's failure to require Deputy Ashby's presence, despite the deputy's failure to document an exigency in his report, despite the Department's failure to present affirmative evidence to support an exigency, and despite significant gaps in the information about Deputy Ashby's entry into the home, the hearing officer, on his own, concluded that exigent circumstances supported the entry. To justify his exigent circumstance conclusion, the hearing officer speculated, without support in Deputy Ashby's report, that the truck's driver could not respond and needed medical attention. The suspected truck was already in the garage and, to the extent there was any concern the truck could be moved, the deputy's car could have blocked the truck while a warrant was obtained. The deputy's report does not document blood on or near the truck. No person was documented to be in the truck. The hearing officer's conclusion that any person in the home needed immediate medical attention was unsupported by record evidence.
¶ 38 Had Deputy Ashby been present pursuant to the valid subpoena, he might have supplied the details necessary to support the hearing officer's conclusions. It is equally likely, of course, that Hanson's counsel could have vigorously cross-examined Deputy Ashby, who never personally observed Hanson driving, and discredited his testimony and his report. Indeed, the record reveals that Deputy Ashby resigned from the Douglas County Sheriff's Office and that, before his resignation, he was involved in an "Internal Affairs investigation and made statements determined to be false and misleading that may bear on [his] credibility as a witness." The record also discloses that while the revocation proceedings were pending, Hanson faced criminal charges arising from the same facts. In the criminal case, the district court entered a suppression order after concluding that Deputy Ashby's entry into the home violated Hanson's constitutional rights.
¶ 39 The hearing officer was understandably concerned about dismissing the revocation proceedings, but because Deputy Ashby was properly subpoenaed, the hearing officer could have offered the parties a short continuance to secure his appearance. See § 24-4-105(5), C.R.S.2011 (when a subpoenaed witness fails to appear, an agency may ask a district court to compel the witness to appear and to impose appropriate punishment); Dep't of Revenue Rule 3.7, 1 Code Colo. Regs. 211-2 (permitting a hearing officer to continue a hearing in order to subpoena any witness or document relevant to the proceeding); Dep't of Revenue Rule 5.10.4.1, 1 Code Colo. Regs. 211-2 (authorizing a hearing officer to reschedule a hearing if a properly subpoenaed witness fails to appear).
II. Analysis
¶ 40 I agree with Hanson's contention that the revocation order should be reversed because the hearing officer erroneously denied him the opportunity to cross-examine Deputy Ashby about the circumstances surrounding the officer's entry into the residence.
¶ 41 Under the statutory scheme, revocation based on refusal of alcohol testing is predicated on a request for such testing by a law enforcement officer having "probable cause" for the licensee's DUI arrest, and, by implication, a lawful basis for the initial contact leading to the DUI arrest. See §§ 42-2-126(5)(a), 42-4-1301.1(2)(a)(I), C.R.S.2011; Peterson v. Tipton, 833 P.2d 830, 831 (Colo.App.1992).
¶ 42 As a threshold matter, and contrary to the majority's conclusion and the Department's contention, I conclude that, in contesting the revocation, Hanson was entitled to challenge the legality of Deputy Ashby's entry into the residence. See Peterson, 833 P.2d at 831 ; see also Nefzger v. Colorado Dep't of Revenue, 739 P.2d 224, 229 (Colo.1987) (concluding that the police had a reasonable suspicion to support an initial traffic stop, and thereby rejecting driver's contention that improper stop invalidated subsequent arrest and license revocation flowing from the stop);
*9 Baldwin v. Huber, 223 P.3d 150, 152 (Colo.App.2009) (a licensee may properly raise issues concerning the legality of initial investigatory stop); Shafron v. Cooke, 190 P.3d 812, 814 (Colo.App.2008) (a driver committed a traffic infraction that justified a police stop of his vehicle). Contra Francen, ¶ 45; Baldwin, 223 P.3d at 154-56 (Furman, J., specially concurring) (driver in a license revocation proceeding may not challenge the legality of an initial investigatory stop).
¶ 43 As the majority acknowledges, one express purpose of the driver's license revocation statute is "[t]o guard against the potential for any erroneous deprivation of the driving privilege by providing an opportunity for a full hearing." § 42-2-126(1)(b), C.R.S.2011. The majority also recognizes that, in circumstances where hearsay statements support a license revocation, the fact that the licensee has the opportunity to subpoena, confront, and cross-examine the officer is a significant consideration in avoiding a due process violation. See Colorado Dep't of Revenue v. Kirke, 743 P.2d 16, 21 (Colo.1987) (noting that the licensee had an opportunity to confront and cross-examine "any of the officers involved" and had the "right to subpoena the initial officer and cross-examine him, but failed to do so"); see also Halter v. Department of Revenue, 857 P.2d 535, 539 (Colo.App.1993) (rejecting the argument that a licensee's due process rights were violated because he could not cross-examine the officer who was not present at the revocation hearing and whose written report was admitted into evidence; licensee had the right to subpoena the officer to require his attendance but failed to do so). Even so, the majority concludes that, because Hanson lacked the right to challenge the validity of the initial police contact, the hearing officer did not err in concluding that the deputy's testimony was unnecessary.[5]
¶ 44 The majority asserts that Hanson has not argued here, and did not argue to the trial court, that there was no probable cause for his arrest. Respectfully, I disagree. Throughout these proceedings, Hanson has vigorously challenged the legality of the home intrusion and the subsequent events. Hanson's argument is that everything which happened after the illegal entry should have been excluded. I need not address the later events, however, because the statutory scheme affords Hanson the right to challenge Deputy Ashby's entry into the home. Given the serious consequences associated with the revocation of a driver's license, it makes complete sense that the statutory framework provides full due process and other constitutional protections. See Francen, ¶ 52 (Taubman, J., dissenting).
¶ 45 I also disagree with the majority's assertion that Hanson did not raise the express consent statute's "probable cause" language as a basis for challenging the initial police contact in this case. To the contrary, at the administrative, district court, and appellate court levels, Hanson's challenge to Deputy Ashby's entry into the residence has been based, in part, on the statute's probable cause language and on the Peterson decision, which expressly relied on that statutory language.
¶ 46 The majority effectively concludes that, even if the statute allows challenges to probable cause, the probable cause requirement does not apply here because the issue implicates exigent circumstances.[6] The majority's distinction between concepts of probable cause and exigent circumstances ignores the line of authority that, in my view, allows drivers to more broadly challenge the constitutionality of the initial police contact. See Peterson, 833 P.2d at 831 ; see also Baldwin, 223 P.3d at 152. Indeed, although concepts of probable cause and reasonable suspicion are also distinct, these cases nevertheless *10 allow drivers to challenge whether police had reasonable suspicion to support an initial vehicle stop. Moreover, in my view, it would be inconsistent for the statute to allow challenges to improper vehicle stops, but disallow similar challenges to unconstitutional home entries.[7] If anything, a private citizen's rights within the home are greater than the right of a driver to be free from an unreasonable vehicle stop. See People v. O'Hearn, 931 P.2d 1168, 1173 (Colo.1997) (citing Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), for the proposition that "[u]nreasonable 'physical entry of the home' is the 'chief evil' against which the Fourth Amendment is directed"); see also People v. Prescott, 205 P.3d 416, 419 (Colo.App.2008) (quoting Payton and concluding that "[a]bsent the exigent circumstances, [the home's] threshold may not reasonably be crossed without a warrant").
¶ 47 Having concluded that Hanson had a right to challenge the validity of the initial police contact, I next conclude that Hanson had a statutory right to conduct cross-examination "as may be required for a full and true disclosure of the facts." Kirke, 743 P.2d at 20 (quoting § 24-4-105(7), C.R.S.2011 ). In my view, the hearing officer erred in concluding that Deputy Ashby's proposed testimony was "not necessary." To the contrary, I conclude that the proposed questioning of Deputy Ashby regarding the circumstances of his entry into the residence was relevant, necessary, and not "needlessly cumulative." See Dep't of Revenue Rule 5.10.3.2, 1 Code Colo. Regs. 211-2.
¶ 48 Although the Department argues that the hearing officer properly admitted and considered Deputy Ashby's written report, it was not the admission or consideration of the report that violated Hanson's due process rights. Rather, it was the hearing officer's consideration and ultimate reliance on the report without providing Hanson any opportunity to cross-examine Deputy Ashby about the report's contents or the deputy's other observations surrounding the entry into the residence.
¶ 49 The Department further asserts that the hearing officer acknowledged Deputy Ashby entered the residence without a warrant and without exigent circumstances, and that Hanson was not prejudiced because these were the very facts he claims he was prevented from establishing through cross-examination. However, this assertion does not accurately characterize the hearing officer's decision. The hearing officer ultimately concluded that Deputy Ashby's entry was legal under the emergency doctrine, which, while technically distinct, is an example or subcategory of an exigent circumstance. See People v. Thompson, 770 P.2d 1282, 1285 (Colo.1989) (emergency doctrine exception to warrant requirement is but a specific example of exigent circumstances doctrine); see also People v. Chavez, 240 P.3d 448, 451 (Colo.App.2010).
¶ 50 Again, Hanson was denied an opportunity to question Deputy Ashby regarding the content of his report, his observations, and the circumstances leading to the initial entry, all of which were relevant in determining whether the emergency doctrine even applied. Moreover, Hanson's challenge to the entry at the hearing was broad enough to cover the emergency doctrine, as his counsel asserted that there was "no valid basis" to enter the house and said that he wanted to inquire about "the details surrounding [the] entry." Hanson's attorney further argued:
Once you open the door without consent, unless you've got a warrant or some type of probable cause with exigency which is certainly not articulated anywhere in this report, that is an illegal entry to the house and from there the poisonous fruit. So I subpoenaed [Deputy Ashby] so we could ask him about these issues.
*11 ¶ 51 In sum, I conclude that the hearing officer violated Hanson's rights to due process and to a fair hearing by determining, based largely on the contents of Deputy Ashby's written report, that Deputy Ashby legally entered the residence, while simultaneously quashing the properly issued subpoena for Deputy Ashby and thereby denying Hanson any opportunity to cross-examine him regarding his report, his observations, and the circumstances surrounding the entry. See Gilbert v. Julian, 230 P.3d 1218, 1222 (Colo.App.2009) (by failing to issue a requested subpoena for documents concerning the functioning of an intoxilyzer, the Department acted inconsistently with its statutory obligations to provide a meaningful opportunity for a fair hearing); cf. Kirke, 743 P.2d at 21 ; Halter, 857 P.2d at 539.
¶ 52 Because the hearing officer's ruling prejudiced Hanson's right to cross-examination and substantially impaired his right to present a defense, I would reverse the revocation and remand for a new hearing in which Hanson is afforded an opportunity to cross-examine Deputy Ashby.[8] See Gilbert, 230 P.3d at 1222-23 (remanding for a new hearing with directions requiring the Department to issue the requested subpoenas); Erbe v. Colorado Dep't of Revenue, 51 P.3d 1096, 1099 (Colo.App.2002) (reversing a revocation order and remanding for a new hearing where the Department effectively denied a driver her statutory right to counsel); see also Barnes v. Department of Revenue, 23 P.3d 1235, 1236-37 (Colo.App.2000) (the Department's failure to follow the statutory requirement that arresting officer be present at the hearing upon driver's written request entitled driver to reversal of the revocation order and to a new revocation hearing); Mameda v. Colorado Dep't of Revenue, 698 P.2d 277, 279 (Colo.App.1985) (reversing revocation and remanding for a new hearing based on the hearing officer's erroneous evidentiary ruling that denied the driver an opportunity to produce rebuttal evidence).

Hanson's counsel repeatedly stated he needed to inquire about "the details surrounding [Deputy Ashby's entry]" and specifically whether that entry was illegal under the circumstances based on the contents of the officer's written report.

To the extent the hearing officer, and the trial court's affirmance, relied on "consent," that consent was simply nonexistent. The deputy's report is clear that he entered on his own initiative. The report in no way suggests that he was given permission before entering. That Ms. Nylund may not have required the deputy to leave immediately is of no consequence to the initial nonconsensual entry.

It is equally inconsistent to have opposing court rulings involving the same incident. The finding in Hanson's criminal case that Deputy Ashby's entry was illegal is clearly inconsistent with the hearing officer's conclusion that exigent circumstances excused the entry. These inconsistent results contradict the Francen majority's assumption of a marginal deterrent effect from the exclusion of evidence in revocation proceedings, as opposed to the exclusion of unlawfully obtained evidence in a criminal case brought as a result of the driver's conduct. Francen, ¶ ¶ 39-42.

I would also conclude that, under these circumstances, the statutory sixty-day period to hold the hearing would begin to run anew when the Department reacquires jurisdiction. See § 42-2-126(8)(a), C.R.S.2011; Gilbert, 230 P.3d at 1223.